## Jones v. Commonwealth.
### (Decided June 11, 1937.)

PERRY B. MILLER and ARTHUR RHORER for petitioner.

HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE THOMAS—Denying writ of habeas corpus.

This is an original proceeding filed in this court by petitioner, Tom Jones, against the Commonwealth of Kentucky, as respondent. The petition correctly sets out that Flossie Jones, the wife of petitioner, was shot and killed on October 30, 1935, in the home of Frank Martin, in Middlesboro, Ky., and that petitioner was afterwards indicted by the grand jury of Bell county, in which he was accused of murdering her; that on November 12th, following the return of the indictment, he was tried and convicted, receiving the death sentence, and that the judgment on appeal therefrom was affirmed by this court in the case of Jones v. Commonwealth, 267 Ky. 465, 102 S. W. (2d) 345. That opinion sets out with more or less particularity the facts adduced by the testimony heard by the trial court, as well as all the errors then relied on by petitioner, as appellant in that appeal. We will, therefore, not attempt to rehearse them here.

The instant petition also avers that on April 29, 1937, the day that Jones was due under the law to be executed by the warden of the Eddyville penitentiary, W. J. Buchannon, an application was made by his attorneys on his behalf before Hon. Elwood Hamilton, Judge of the U. S. District Court for the Western District of Kentucky, for a writ of habeas corpus, and for an order temporarily staying the execution, due to be carried out after the following midnight, and to remain in force until the application could be heard and disposed of. It later was done, and on the hearing the applicant

therein, and petitioner here, introduced a number of witnesses, all of whom, except one or two, whose testimony was but remotely, if at all material, resided in Middlesboro, Ky., where the homicide occurred. The majority of them not only lived in immediate contiguous premises to the one in which the decedent lost her life, but were also closely related to very material witnesses heard at the trial and some of whom were actually subpoenaed as witnesses by the Commonwealth and attended the trial in the Bell circuit court at which petitioner was convicted. Therefore, the only ground for the application before Judge Hamilton, as well as the only ground urged in the instant petition for relief, was and is alleged newly discovered evidence, the chief and practically the sole tenor of which was and is to contradict or impeach the testimony of only two, but yet material, witnesses who testified for the Commonwealth, one of whom was a little girl between six and seven years of age, whose name was Mary Lee Martin, the other one being Virginia Shumate. Their testimony and its materiality will be revealed by reading our opinion affirming the judgment of conviction, and which we adhered to on a petition for rehearing. The testimony heard at the hearing before Judge Hamilton, and his opinion later rendered, are made a part of this original application to this court.

It also appears in the instant record that on May 4, 1937, while the suspension order of Judge Hamilton was still in force (he having declined to render final judgment until what he conceived to be possible remedies yet available in the state court had been exhausted, but retaining the restraining order until that could be determined), petitioner applied to Judge James M. Gilbert of the Bell circuit court, who presided in the trial of the prosecution, for a writ of habeas corpus, and also, in a separate independent application made to him, petitioner asked for a writ of coram nobis, each of which he denied. But the only part of either of such applications that petitioner has brought to us in this original action are the orders made by Judge Gilbert dismissing the applications. None of the pleadings or evidence adduced, by affidavits or otherwise, have been made a part of this application. But it is alleged in respondent's instant petition that the grounds therefor were the same as those relied on in the application to Judge Hamilton, and which is, as we have said, only alleged newly dis-

covered evidence of doubtful credibility, with a slight rehash of one of the grounds urged for reversal, which was the refusal of the court to postpone the trial at the time petitioner was convicted to a later date and to hold it at Middlesboro instead of Pineville, both of which are located in Bell county, Ky., and in each of which the circuit court under authorized legislation may be held.

The prayer of the instant petition is thus stated: "Wherefore, your petitioner prays that a writ of habeas corpus issue forthwith to be seasonably returnable and that he be discharged from such unlawful restraint and imprisonment and for all other proper, just and equitable relief." In an amended petition filed in this court petitioner, through his counsel, alleged that certain state constitutional guarantees were not observed in the trial of petitioner, they relating to his right to the assistance of counsel in his defense, and his inalienable right of defending his life and liberty and his right to trial in the most convenient county in which a fair one might be obtained. The last sentence of the amended petition is in these words: "Under the newly discovered evidence and other facts peculiar to this case and the law applicable, your petitioner respectfully represents that it is within the jurisdiction and power of this Court to proceed by habeas corpus and to direct the Bell circuit court to grant the petitioner a new trial." The prayer is the same as in the original one. It will thus be seen that in none of the instant pleadings of petitioner does he ask for a writ of coram nobis, although its office and purpose, and the alleged applicability thereof to the facts of this case as so presented, are discussed and urged on pages 13-16 of petitioner's printed brief filed on this hearing.

To begin with no respondent is named in any of the petitioner's pleadings except the "Commonwealth of Kentucky." The unlawful detainer of petitioner, if there be one, is W. J. Buchannon, the warden of the Eddyville penitentiary, whose duty it is under the law to execute petitioner pursuant to the judgment directing his punishment. Neither he, nor any other officer having the remotest connection with any duties appertaining to the enforcement of the judgment of conviction, is made a party to this proceeding in this court. So that, if we were to sustain the motion for the writ of habeas corpus, so exclusively prayed for, we would be at a loss to know to whom our command should be directed. But,

waiving that point and putting it aside because of the seriousness of the case, and treating it as if all necessary parties had been made in the application for such writs, we are then confronted with the question as to whether or not we have jurisdiction in the circumstances of the case to issue such a writ on original application first made in this court. As presently advised, we entertain grave doubt of our authority to do so. See McLaughlin v. Barr, 191 Ky. 346, 230 S. W. 304. But, however that may be, the opinion just referred to expressly says—even in extreme cases where our original jurisdiction as given by section 110 of our Constitution might be so extended—that (as stated in the syllabus and which the opinion sustains) "where one is imprisoned under the judgment of court, the writ of habeas corpus does not lie for his relief *unless* the judgment is void, as such writ can not be made to *do the office* of an appeal." (Our italics.) That statement is in accord with the universally declared law upon the subject, as will be seen from the text in 29 C. J. as recorded on pages 6, 19, and 24 of that volume, and in sections 1, 11, and 18 of the treatment of the subject "Habeas Corpus" wherein it is said in section 1: "But it is not available as a writ for the review and correction of mere errors in proceedings, as distinguished from jurisdictional defects." In other words, its office is not to correct errors, but to relieve against invalidity.

Equally well established is the law that the writ does not lie if there exists other available and efficient remedies open to the applicant. However, it is pointed out in that text, and other standard ones in treating the subject, that the writ will lie and be available even when its granting would accomplish an analogous effect of a review on appeal, but *only* when the involved judgment so indirectly affected is *void* for want of jurisdiction, or for any other reason, and in which case, of course, it is the same as no judgment at all. Therefore, even in such case the office of the writ is to relieve the applicant from the consequences of *illegal* restraint and to set him free. It is in no sense akin to an application for a new trial, nor as taking the place of an appeal from a conviction for crime, except, as we have intimated, where the alleged conviction was for any reason *void*. While counsel in their pleadings in this application do charge that the trial of petitioner before Judge Gilbert was void, yet the record they make, a part of which was

the one brought here on the appeal from the conviction supra, clearly demonstrates that the trial was conducted according to the forms of law; that the court had jurisdiction of the person and subject matter, and that it was discretionary with him as to whether the case should be tried in Pineville or Middlesboro, and, therefore, no fact is made to appear that would in the least point towards any fact having the remotest tendency to render the conviction void.

Even the alleged newly discovered evidence, forming the sole basis of all of the complaints made against the judgment, either before Judge Hamilton or in this instant proceeding, was not brought before the trial court on the motion for a new trial, or any amendment thereof, and the only time or occasion when the trial court's attention was called to it was in the two applications supra, made to it on May 4, 1937, hereinbefore referred to; but which, we repeat, is not manifested to us in any other way than by averment in petitioner's pleadings. For the numerous reasons to which we have referred, it is, therefore, plain that this application, which is exclusively one for the issual of a writ of habeas corpus, is not available to the petitioner, and for which reason his motion therefor must be, and it is, overruled.

Notwithstanding there is no prayer in petitioner's pleading, as we have pointed out, for the granting of any relief by us on this original hearing, except the issuing of a writ of habeas corpus against the Commonwealth, counsel do discuss in their brief, as we have stated, the writ of coram nobis and insist that such ancient writ is available to their client in this case, although not prayed for in any of his pleadings. That writ, as we have said, is of ancient origin, as is also true of its companion one, coram vobis. See 13 C. J. 1235; also the text in 2 R. C. L. pages 305-310, secs. 259-266. A most extended and exhaustive dissertation upon those ancient writs, their office and when they may be invoked, as well as the procedure in the court having original jurisdiction to grant them, is made by Judge Elliott of the Indiana Supreme Court in the case of Sanders v. State, 85 Ind. 318, 44 Am. Rep. 29. That opinion is in accord with the cited text, as well as the writings of Blackstone and other ancient authors treating the subject, and it clearly points out that, in jurisdictions where the remedy given by those writs have not

been superseded, and consequently remain in effect, they may be invoked, not, however, for the purpose of taking the place of an appeal, where one is allowed, or to any-wise serve the office of a writ of habeas corpus, but to obtain a new trial of the applicant's cause for the reason and upon the ground that his purported trial was in fact no trial at all, but because of the condition of the record appearing fair upon its face, the remedy by appeal or other prescribed rules of practice will not reach his unfortunate situation. That phase of the office of such ancient writs is elaborately treated and discussed in the opinion of the distinguished Judge Elliott which he prepared for the Indiana Supreme Court in the Sanders Case supra.

However, we are not called upon at this time to determine whether or not those writs have been, or have not been, superseded by any legislation in this Commonwealth, or to determine whether or not they are yet a part of the remedial law of this jurisdiction, since all of the writers on the subject, and all courts dealing with such remedies, confine their employment to procedures instituted before the court that tried the case, which in this instance was Judge James M. Gilbert, the presiding judge of the Bell circuit court. Therefore, the time and place for us to determine such questions, as suggested above (or others that might be presented), would be on an appeal from his judgment denying the new trial, which the writ, if available, was intended to obtain. No appeal has yet been prosecuted from the dismissal order made by him, and we are without jurisdiction to grant any such writ upon this original application to us, or to determine whether or not it is still a part of our remedial law and, of course, we are also without jurisdiction to determine whether or not the facts would support the application or justify the issuing of the writ, even if we should conclude it was an available one, which, as presently advised, we think is true. Since we have no jurisdiction in the matter we deem it unnecessary at this time to elaborate the questions involved further than to say that there is no showing made of any errors committed at the trial wherein petitioner was convicted, much less is there any showing that the judgment of conviction possessed any of the elements of invalidity.

Wherefore, for the reasons stated, the motion is denied, and the petition is dismissed.