### JONES v. COMMONWEALTH OF KENTUCKY.

No. 7978.

Circuit Court of Appeals, Sixth Circuit.

June 8, 1938.

336

Perry B. Miller, of Louisville, Ky. (Perry B. Miller, of Louisville, Ky., and Arthur Rhorer, of Middlesboro, Ky., on the brief), for appellant.

A. E. Funk, of Frankfort, Ky. (Hubert Meredith, of Greenville, Ky., and A. E. Funk, of Frankfort, Ky., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appellant was convicted of murder and sentenced to death by a Kentucky court. Having exhausted local remedies by way of petition for new trial, appeal, petitions for writ of habeas corpus and for writ of coram nobis, he challenged the manner of conviction as impairment of his right to due process under the Constitution of the United States (Amendment 14) by petition for writ of habeas corpus in the United States District Court.

The Attorney General of Kentucky, after "giving the matter more than ordinary consideration," is "strongly inclined to the view that Tom Jones was convicted on perjured testimony." The Court of Appeals of Kentucky, suppressing "sympathy for him, because of his unfortunate predicament," relegated him to his last and final remedy of an appeal for clemency, although we are told, without contradiction, that it is public information that the Governor of the Commonwealth conceives himself bound by a pledge not to exercise the pardoning power. The United States District Judge, now a judge of this court, seemingly convinced that appellant's constitutional rights were impaired and that his conviction was procured by perjured testimony, questioned the power and propriety of a single district judge to reverse the decision of the highest court of the state, and with commendable restraint, contented himself with the issuance of a certificate of probable cause to permit decision by a court clothed with greater authority. And so, unless there is power here to relieve the appellant from a result the injustice of which is so strongly suggested, and impairment of constitutional rights is so clear as to call for its exercise, the man must die.

The appellant was indicted November 4th on the charge of murder for the killing of his wife with a pistol on October 30th. On Friday, November 8th, he was arraigned, pleaded not guilty, counsel was appointed for him, and trial was set for Tuesday, November 12th. Though the case was not reached until Thursday, November 14th, counsel was obliged to remain in court subject to call. Excluding Sunday, November 10th, three days were thus left for the preparation of the defense. Motion for a ten-day continuance, supported by affidavits, was denied. No one had seen the shooting. The principal witnesses for the commonwealth were a six year old girl, who testified as to a threat of killing by the appellant, and a woman of ill repute, who testified to the slain woman's dying declaration. The defense was that the pistol was discharged in a scuffle for its possession when the wife threatened her own life. Newly discovered evidence offered to the state courts, in support of the several petitions thereto addressed, casts grave doubt upon the competency and freedom from duress of one and upon the veracity of both of the prosecution's principal witnesses. The court below, and the Attorney General of Kentucky, who cross-examined the witnesses on the first habeas corpus petition, were obviously impressed by the new evidence. The statement of the latter to the Court of Appeals of Kentucky is printed at length in the margin.[1] Thrice in this

---

[1] "Hypertechnical reasons for overruling the petition for rehearing in the instant case might be found and urged with considerable plausibility were we disposed to restrict our inquiry to the narrow bounds of purely technical considerations. With all the difficulty we have experienced in this case, and realizing that a human life is involved, we do not feel disposed to ask for a strict application of narrow and technical rules, but request rather that the case be considered from the broad standpoint of right and justice. We have been constrained to take this position primarily upon the doubt that we entertain concerning Tom Jones'

court does he repeat his doubt of the justice of the judgment. The Kentucky court did not directly pass upon the newly discovered evidence, basing its denial of the writs of habeas corpus and coram nobis on jurisdictional grounds. Jones v. Commonwealth, 267 Ky. 465, 102 S.W.2d 345; Id., 269 Ky. 772, 108 S.W.2d 812; Id., 269 Ky. 779, 108 S.W.2d 816. It is clear from the record below that none of the new evidence was known to the appellant or his counsel at the time of the trial, and it is likewise clear that much of it would have been discovered had a reasonable continuance been granted for the purpose of preparing a defense and had the trial been held in the division of the judicial district where the crime was alleged to have been committed and where the appellant lived.

The writ of habeas corpus in the present case was presented to the court below in pursuance of section 453, T. 28, U. S.C., 28 U.S.C.A. § 453, and the appeal from its denial is entertained under section 466 of the same title, 28 U.S.C.A. § 466. We are not insensible to the extraordinary nature of the writ and the caution that must be exercised in granting it where, as here, the petitioner has been denied relief by the courts of the state. Frank v. Mangum, 237 U.S. 309, 326, 35 S.Ct. 582, 59 L.Ed. 969; Ashe v. United States, 270 U.S. 424, 425, 46 S.Ct. 333, 334, 70 L.Ed. 662; Bard v. Chilton, 6 Cir., 20 F.2d 906. It is not a substitute for appeal, Knewel v. Eagan, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036, and errors of law upon the trial are not through it subject to review. Frank v. Mangum, supra. But the complaint here is not the commission of mere error, "but of a wrong

so fundamental that it [must make] the whole proceeding a mere pretense of a trial and [render] the conviction and sentence wholly void." Brown v. Mississippi, 297 U.S. 278, 286, 56 S.Ct. 461, 465, 80 L.Ed. 682; Moore v. Dempsey, 261 U.S. 86, 91, 43 S.Ct. 265, 67 L.Ed. 543. It is true that the trial court recognized its duty to assign counsel as a necessary requisite of due process of law. But "that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." Powell v. Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158, 84 A.L.R. 527 (the first Scottsboro case). It is likewise true that three days were available to counsel within which to make an investigation and to prepare for defense. But when we take into consideration that this was a capital case, that the defendant was in jail and unable to himself give assistance, that the trial was to be held at a distance from the place where the crime was committed, and that counsel brought to the attention of the court by motion and supporting affidavits his inability to properly prepare for trial within the time, we think it must be concluded that the constitutional right of the defendant to be heard by counsel as a necessary requisite of due process of law had not been preserved to him.

It is, of course, perfectly true, as noted in Powell v. Alabama, supra, that great and inexcusable delay in the enforcement of the criminal law has been a serious evil of the times and has brought the administration of the criminal laws into disrepute. But we progress little if freeing the admin-

---

guilt which has arisen upon a careful consideration of newly discovered evidence. If this newly discovered evidence is to be believed, then Tom Jones was convicted by perjured testimony. There is no logic or rule of law known to us whereby the infliction of the death penalty, or in fact any other punishment, upon perjured testimony can be justified. It will be remembered that one of the two witnesses whom it is claimed gave manufactured, or perjured, testimony was an infant who contradicted herself in her version of the affair and whom the newly discovered evidence convicted to perjury. "The other was a woman of ill repute and who was not present and did not know of any of the things she testified to, according to the newly discovered evidence. We have found nothing in the record that indicates that the persons who

made the affidavits and gave the newly discovered evidence were biased or interested or telling an untruth. They at least stand as fair as the two witnesses whom they contradicted and convict of giving perjured testimony at the trial. Their testimony was sufficient to convince Judge Hamilton that Tom Jones had been convicted on perjured testimony. Having the knowledge of the record, and the high regard for Judge Hamilton that we have, we are strongly inclined to the view that Tom Jones was convicted on perjured testimony. We may be in error, but this is our feeling after giving the matter more than ordinary consideration; and, feeling this way, we cannot ask the court to let the judgment of conviction stand or to allow the judgment to be carried into execution."

338

istration of justice from one evil we permit it to become enmeshed in a second, and in our effort to achieve promptness go forward with such haste as to close the door upon the "calm spirit of regulated justice."

Nor are constitutional safe-guards maintained or respect for the judicial process promoted by convictions secured on perjured testimony. If the new evidence offered in the present case is to be given any credence, and credible it appeared to the chief law officer of Kentucky, who had opportunity to cross-examine the witnesses, and to the United States District Judge, there is reason to believe that the conviction here assailed was so secured. This is not in criticism of the Attorney General, for its infirmity was not disclosed to him until after the conviction, though it might well have been discovered had reasonable opportunty for investigation been accorded the defendant and his counsel.

The concept of due process as it has become crystallized in the public mind and by judicial pronouncement, is formulated in Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 341, 342, 79 L.Ed. 791, 98 A.L.R. 406. Its requirement in safe-guarding the liberty of the citizen against deprivation through the action of the state embodies those "fundamental conceptions of justice which lie at the base of our civil and political institutions," referred to in Hebert v. Louisiana, 272 U.S. 312, 316, 317, 47 S.Ct. 103, 71 L.Ed. 270, 48 A.L.R. 1102. This requirement cannot be satisfied "By mere notice and hearing if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation." If it be urged that the concept thus formulated but condemns convictions obtained by the state through testimony known by the prosecuting officers to have been perjured, then the answer must be that the delineated requirement of due process in the Mooney Case embraces no more than the facts of that case require, and that "the fundamental conceptions of justice which lie at the base of our civil and political institutions" must with equal abhorrence condemn as a travesty a conviction upon perjured testimony if

later, but fortunately not too late, its falseness is discovered, and that the state in the one case as in the other is required to afford a corrective judicial process to remedy the alleged wrong, if constitutional rights are not to be impaired.

The judicial processes of the state have here been vainly invoked. The court below stayed its hand until they had been given full opportunity to function. Even then it was thought wiser to have the clearly indicated relief sanctioned by a three judge reviewing court than to have responsibility for setting aside a state court judgment assumed by a single judge of an inferior Federal court. Considerations of delicacy and propriety need no longer deter amelioration. The appellant is not to be sacrificed upon the altar of a formal legalism too literally applied when those who from the beginning sought his life in effect confess error, when impairment of constitutional right may be perceived, and the door to clemency is closed.

The order dismissing the writ is set aside, and the cause is remanded to the District Court with instructions to discharge the appellant from custody, without prejudice to the right of the commonwealth to take such other proceedings according to law as are consistent herewith.

Reversed.