**Henry Clay BURKS, Petitioner-Appellant,**

v.

**Charles EGELER, Warden, People of the State of Michigan, Respondents-Appellees.**

**No. 73–2003.**

United States Court of Appeals, Sixth Circuit.

Feb. 6, 1975.

---

Henry Clay Burks, pro se, William J. Dammarell, Cincinnati, Ohio (Court Appointed), for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Mich., Robert A. Derengoski, Thomas A. Carlson, Jann C. Ryan, Lansing, Mich., for respondents-appellees.

Before PHILLIPS, Chief Judge, and McCREE and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

Henry Clay Burks, originally charged with second degree murder, was convicted of manslaughter by a Detroit Recorder's Court jury on July 25, 1968, and sentenced to a term of ten to fifteen years in prison. Following denial of a motion for new trial, Burks' conviction was affirmed by the Supreme Court of Michigan.[1]

In a petition to the district court for writ of habeas corpus under 28 U.S.C. § 2254, Burks alleged eight issues,[2] but

---

1. People v. Burks, 30 Mich.App. 102, 186 N.W.2d 18 (1971); People v. Burks, 387 Mich. 393, 196 N.W.2d 777 (1972).

2. The eight claimed violations were:
   1. The selection of jurors violated petitioner's rights to a fair trial.

after careful examination of the record in the state proceedings, the district judge considered only two issues on the merits, properly refusing to rule on the remainder because Burks had failed to exhaust his state remedies as to them. The trial judge found no merit in the two issues on which Burks had exhausted his state remedies. We agree and affirm.

Appellant's conviction arose out of a brawl at Gene's Bar on East Jefferson Avenue in Detroit on March 19, 1968. Burks and the deceased, Christy Earls, had entered the bar shortly before eleven p. m. and Earls soon became involved in a dispute with another patron, one LaFleure. During the course of the ensuing scuffle, Earls was shot in the upper left thigh, the bullet completely severing the femoral vein and partially severing the femoral artery. Earls bled to death and Burks was charged with second degree, or unpremeditated, murder.

At the trial it was the state's contention that Burks had fired the fatal shot, intending it, however, for LaFleure and not for Earls. Burks denied firing the shot. He claimed instead that Earls was in possession of the gun at the time of the scuffle and that the wound was self-inflicted when the gun went off accidently as Earls sought to hit LaFleure with the butt end of it.

Burks claims that he was wrongfully precluded from introducing evidence of the prior criminal record of Earls, for the purpose of showing that a man with such a record would more likely be in possession of the pistol, thus corroborating Burks' self-inflicted wound theory. Admissibility of evidence in a state trial does not normally raise constitutional questions unless it impugns fundamental fairness. Gemmel v. Buchkoe, 358 F.2d 338 (6th Cir. 1966), cert. denied 385 U.S. 962, 87 S.Ct. 402, 17 L.Ed.2d 306, reh. denied 385 U.S. 1021, 87 S.Ct. 723, 17 L.Ed.2d 561. We agree with the district judge that no constitutional issue was presented here, and note that in any event the defense succeeded in getting the desired information before the jury by other evidence.

Finally, Burks claims that he was denied his Fourteenth Amendment right to due process because his conviction was based upon perjured testimony and because certain witnesses whom he had intended to call failed to show up at the trial after being threatened.[3] In proof thereof, he submitted a number of affidavits in support of his motion for a new trial, made to the state trial judge more than a year after his conviction. Burks' counsel brought some of the affiants to the hearing and while the judge declined to take their testimony, he indicated a complete familiarity with the contents of the affidavits, and Burks' counsel indicated that if called, the witnesses would "re-testify to what they have put in their affidavits." The state trial judge, in denying the motion, displayed a

---

2. There was tampering with witnesses that further deprived him of a fair trial.

3. There was an erroneous refusal by the trial judge of introduction of evidence pertaining to the past record of petitioner's victim.

4. The trial judge erred in his instructions to the jury as to the credibility of certain witnesses, thereby prejudicing the jury.

5. A witness for the state testified falsely.

6. That all judicial officers from the court reporter to the Chief Justice of the Michigan Supreme Court practiced financial and racial discrimination against petitioner in denying him his trial record for appeal.

7. That the trial judge abused his discretion in denying petitioner's motion for a new trial without hearing petitioner's witnesses.

8. That all of the judicial proceedings in which petitioner has been involved in thus far evidence a "corrupt Judicial System," for the above stated reasons.

3. The record shows that Burks deliberately determined not to subpoena those witnesses because the subpoena "would have an adverse effect on them." The trial judge denied a request for two days' adjournment to locate the witnesses, but did postpone trial that day for two hours for that purpose.

healthy skepticism concerning the reliability of the affidavits, and commented:

> "Now notwithstanding this information, if true, has been known to this defendant for this extended period of time, there is no indication that such illegal conduct was ever reported to the Wayne County Prosecutor."

On appeal to the Michigan Court of Appeals, that court stated:

> "Such information as contained in the affidavits is asserted to be in the nature of new evidence. Such evidence, if newly discovered, can form the basis for the granting of a new trial if it meets with the requirements as set out in People v. Keiswetter (1967), 7 Mich. App. 334, 151 N.W.2d 829. Such determination is directed to the sound discretion of the trial court. People v. Nickopoulous (1970), 26 Mich.App. 297, 182 N.W.2d 83. The trial court has denied defendant's motion for a new trial. Giving due regard to the superior opportunity of the trial court to appraise the credibility of the trial witnesses and the several affiants, we cannot say that the court abused its discretion in denying defendant's motion." People v. Burks, *supra*, 30 Mich.App. 102, 186 N.W.2d 18, at p. 19 (1971).

Thus Michigan courts recognize, as does the federal system, that the decision to grant a new trial is usually addressed to the sound discretion of the trial court, Rule 33, Federal Rules of Criminal Procedure; U. S. v. Sposato, 446 F.2d 779 (2nd Cir. 1971).

The thrust of the affidavits presented and considered by the state courts and by the district court here was that one Joseph Golden, who testified at trial on behalf of the prosecution, succeeded, by threat of bodily harm, in persuading certain witnesses either to avoid testifying or to perjure the testimony they gave. Golden's motive, it is claimed, was a mistaken belief that his sister might be the beneficiary of double indemnity insurance on Earl's life if it were shown that the death wound was not self-inflicted.

In Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), the Supreme Court, while denying relief on other grounds, made it clear that the Fourteenth Amendment right to due process prohibits a knowing and deliberate use by a state of perjured evidence in order to obtain a conviction. And in Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967), federal habeas corpus was extended to protect the petitioner where it appeared that the prosecution in the state court had deliberately represented to the court and jury that certain stains on the victim's clothing were blood when it knew they were in fact paint.

> "More than 30 years ago this Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence. Mooney v. Holohan, 294 U.S. 103 [55 S.Ct. 340, 79 L.Ed. 791]. There has been no deviation from that established principle. Napue v. People of State of Illinois, 360 U.S. 264 [79 S.Ct. 1173, 3 L.Ed.2d 1217]; Pyle v. State of Kansas, 317 U.S. 213 [63 S.Ct. 177, 87 L.Ed. 214]; cf. Alcorta v. Texas, 355 U.S. 28 [78 S.Ct. 103, 2 L.Ed.2d 9]. There can be no retreat from that principle here." Miller v. Pate, *supra*, at p. 7, 87 S.Ct. at p. 788.

Mooney v. Holohan, *supra*, emphasized that it was the knowledgeable and deliberate use of the perjured evidence which constituted the constitutional infringement. In other words, it is "state action" which lies at the heart of the violation:

> "Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation. And the action of prosecuting officers on behalf of the state, like that of administrative officers in the execution of its laws, may constitute state action within the purview of the Fourteenth Amendment. That amendment governs any action of a

state, 'whether through its legislature, through its courts, or through its executive or administrative officers.' Carter v. Texas, 177 U.S. 442, 447 [20 S.Ct. 687, 689, 44 L.Ed. 839]; Rogers v. Alabama, 192 U.S. 226, 231 [24 S.Ct. 257, 48 L.Ed. 417]; Chicago, Burlington & Quincy R. Co. v. Chicago, 166 U.S. 226, 233, 234 [17 S.Ct. 581, 41 L.Ed. 979]." Mooney v. Holohan, *supra,* 294 U.S. at 112, 113, 55 S.Ct. at 342.

In subsequent decisions addressed to the due process issue, the Supreme Court has consistently noted the presence of impermissible state involvement in the untruthful testimony, e. g., Miller v. Pate, *supra.* In Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942), the allegation was that the perjured testimony was induced by threats from local authorities of a penitentiary sentence, and that there was knowing use of the perjured testimony as well as deliberate suppression of favorable evidence. In Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957), while the perjury was not claimed to have been procured, it was known to have existed when given at the trial. There, the defendant was accused of murdering his wife, and claimed in defense that he did so in a fit of sudden passion aroused when he discovered his wife, already suspected of infidelity, kissing one Castilleja late at night in a parked car. The government, knowing of illicit intercourse between Castilleja and the wife, nevertheless suffered Castilleja to testify falsely that the relationship had been nothing more than one of casual friendship. In Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), the Supreme Court held that due process had been denied where the prosecution knowingly and without correction elicited false testimony that no promise of leniency had been given in exchange for the testimony of a prosecution witness. At the same time, *Napue* pointedly referred to "[t]he principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . .", 360 U.S. at 269, 79 S.Ct. at 1177.

In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), it was held that suppression by the prosecution of evidence requested by the accused and favorable to him violated due process where the evidence is material either to guilt or punishment. Irrespective of the good faith or bad faith of the prosecution, the Court found that the existence of the evidence was nevertheless knowingly and deliberately concealed. And in Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), one Taliento, an unindicted but named co-conspirator was the only witness linking defendant Giglio with the crime of passing forged money orders. On cross-examination, Taliento denied any promises of leniency and the government attorney affirmatively stated that he received no promises that he would not be indicted. Unknown to the trial attorney, the testimony was false, for in fact a promise of leniency had been made by an assistant. This was held sufficient to constitute a violation of due process because, "whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government". *Giglio, supra,* at 154, 92 S.Ct. at 766. Again, it was government action and responsibility which lay at the heart of the violation.

It can, of course, be argued that if a man is convicted in a trial into which perjury has intruded, it matters little to him who was or was not involved in it. It can also be argued with great force that in a trial which is close on its facts and hotly disputed, even the slightest error can make the difference between acquittal and conviction. The distinction between that which constitutes state action under *Holohan* and that which does not, however, still has validity as marking the borderline of federal constitutional involvement. Deviations from the perfect case, perfectly tried will inevitably occur in both the federal and state judicial systems, and each can in most instances be expected to supervise itself, guided by proper judi-

cial considerations for the protection of persons accused of crime.

> "Upon the state courts, equally with the courts of the Union, rests the obligation to guard and enforce every right secured by that Constitution." *Holohan, supra,* 294 U.S. at p. 113, 55 S.Ct. at 342.

Due process is concerned with "minimal historic safeguards for securing trial by reason", McNabb v. United States, 318 U.S. 332, 340, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943). It does not guard against all error.

> "What it [due process] does require is that state action, whether through one agency or another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions and not infrequently are designated as 'law of the land'." Hebert v. Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926).

Thus we frequently find that certain errors, or circumstances so alleged, may and do properly suggest correction in both the state and federal judicial systems without rising to the level of constitutional issues, see e. g., McNabb v. United States, *supra*; United States v. Augenblick, 393 U.S. 348, 356, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). We conclude that such is the circumstance here.

■ In contrast to direct appellate review of cases originally tried in a federal court, where non-constitutional error can be and is often corrected, habeas corpus relief can only be afforded where the error claimed to have been committed in the state court system is one of federal constitutional dimensions. In Mesarosh v. United States, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956), the Supreme Court was confronted by the admission of the Solicitor General, following conviction of petitioners under the Smith Act, that a paid government informer, one of seven witnesses for the government in the case, had subsequently and in another case given testimony which the Solicitor had serious reason to believe was untrue. At the same time, the Solicitor maintained before the Court his belief that there had been no actual perjury in the case at bar. Thus, if the testimony was indeed false, there was no claim or showing that the government knew it when it was offered, or in any way induced it. Because the facts are so similar to those here, and perhaps stronger because the suspect witness was a paid informer, we believe it is significant that the Supreme Court, while remanding for new trial, took particular pains to do so on the non-constitutional basis of its "supervisory jurisdiction over the proceedings of the federal courts", with pointed reference to *McNabb*, 352 U.S. at 14, 77 S.Ct. at 8.

A requirement of state involvement as a prerequisite to finding constitutional error has also been the understood rule in other circuits.[4]

> "The dissenting opinion deplores what it senses is undue emphasis by the Court on the so-called technicalities of perjury, presumably Texas peculiarities, even though its concepts seem to be those everywhere held. But for an otherwise valid state conviction to be upset years later on federal habeas, surely something more than an evidentiary *mistake* must be shown. If *mistake* is enough, then never, simply never, will the process of repeated, prolonged, postconviction review cease. For in every trial, or at least nearly every trial, there will be, there are bound to be, some mistakes.
> "What elevates the 'mistake' to a constitutional plane is at least twofold. First, the mistake must be material in the sense of a crucial, critical, highly significant factor.

---

4. Smith v. United States, 358 F.2d 683 (3rd Cir. 1966), holding that the absence of an allegation of government knowledge is a fatal defect to a petition under 28 U.S.C. § 2255. Sessions v. Manning, 227 F.2d 324 (4th Cir. 1955); Luna v. Beto, 395 F.2d 35 (5th Cir. 1968); Purkhiser v. Wainwright, 338 F.Supp. 369 (S.D.Fla.1972), affirmed 455 F.2d 506 (5th Cir. 1972). Of particular interest is Luna v. Beto, *supra*, where the Fifth Circuit sitting en banc, considered whether, upon the record before it, perjury had been committed and the extent of state complicity. While the facts in Luna v. Beto, *supra*, sound suspiciously like *Giglio*, the concurring opinion of Chief Judge John R. Brown, joined in by Circuit Judges Gewin, Bell, Thornberry, Coleman, Ainsworth, Simpson and Clayton, made the following comment:

All of this long standing and consistent authority would appear to make our task here simple except for Jones v. Commonwealth of Kentucky, 97 F.2d 335 (6th Cir. 1938).

In *Jones,* the petitioner for habeas corpus and for writ of coram nobis relief was convicted of the murder of his wife and sentenced to death by a Kentucky state court. He had fully exhausted all of his local remedies, but without success, even though he alleged that his conviction was procured by perjured testimony. Like Burks here, Jones who was charged with having shot and killed his wife with a pistol, claimed that the pistol was discharged in a scuffle for its possession when the wife threatened her own life. While we are not specifically told what new evidence was presented to the Kentucky court, except for a suggestion of the unreliability of two eye witnesses, including the possible duress of one of them, the Attorney General of Kentucky himself was "strongly inclined to the view that Tom Jones was convicted on perjured testimony". The Court of Appeals of Kentucky indicated "sympathy for him, because of his unfortunate predicament", (Jones v. Commonwealth, 267 Ky. 465, 102 S.W.2d 345, at 351–352 [1937]), but accorded no relief. Likewise, the district judge was himself convinced that the conviction was procured by perjured testimony. This court granted habeas corpus:

"The concept of due process as it has become crystallized in the public mind and by judicial pronouncement, is formulated in Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 341, 342, 79 L.Ed. 791, 98 A.L.R. 406. Its requirement in safe-guarding the liberty of the citizen against deprivation through the action of the state embodies those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' referred to in Hebert v. Louisiana, 272 U.S. 312, 316, 317, 47 S.Ct. 103, 71 L.Ed. 270, 48 A.L.R. 1102. This requirement cannot be satisfied 'By mere notice and hearing if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation.' If it be urged that the concept thus formulated but condemns convictions obtained by the state through testimony known by the prosecuting officers to have been perjured, then the answer must be that the delineated requirement of due process in the Mooney Case embraces no more than the facts of that case require, and that 'the fundamental conceptions of justice which lie at the base of our civil and political institutions' must with equal abhorrence condemn as a travesty a conviction upon perjured testimony if later, but fortunately not too late, its falseness is discovered, and

Second, it must have some State complicity in it. As to this, I do not for a moment think innocence of the prosecutor is an assured out. For Barbee [sic Barbee v. Warden, 331 F.2d 842 (4th Cir. 1964)] properly teaches that the police are very much a part of the State and its prosecutorial machinery. But someone in the state machinery must have some awareness that testimony being palmed off as the gospel is something else indeed." Luna v. Beto, *supra,* 395 F.2d at 40–41.
See also Geach v. Olsen, 211 F.2d 682 (7th Cir. 1954); Marcella v. United States, 344 F.2d 876 (9th Cir. 1965). Wagner v. Hunter, 161 F.2d 601 (10th Cir. 1947), is frequently cited and the issue seems to have risen often in the Tenth Circuit. See Tilghman v. Hunter, 167 F.2d 661 (10th Cir. 1948); Story v. Burford, 178 F.2d 911 (10th Cir. 1949); Lister v. McLeod, 240 F.2d 16 (10th Cir. 1957). As stated in Wagner v. Hunter, *supra,* 161 F.2d at 602,
"Taking petitioner's own testimony at par, the most that can be said for it is that it shows that some of the witnesses gave false testimony. But even if this be true, it does not void the judgment. The vice which will vitiate the judgment of a court is the knowing, wilful and intentional use of perjured testimony in a trial to secure a conviction."

that the state in the one case as in the other is required to afford a corrective judicial process to remedy the alleged wrong, if constitutional rights are not to be impaired." Jones v. Commonwealth of Kentucky, *supra,* 102 S.W.2d at 338.

If Jones v. Commonwealth is construed to spell out a general rule in this circuit that the intrusion into a state trial of perjured evidence is sufficient without more to constitute a due process violation, we would be compelled at a miminum to determine whether the district court erred in refusing to hold an evidentiary hearing on the perjury issue. Curiously, however, while Jones v. Commonwealth has frequently been noted elsewhere,[5] it has been largely neglected by the courts within the Sixth Circuit.

At least two of the district courts within this circuit have encountered this problem and both have resolved it in accordance with the majority rule and completely without reference to Jones v. Commonwealth.

In Kowalak v. Frisbie, 93 F.Supp. 777 (E.D.Mich.1950), District Judge Thomas P. Thornton relied upon Tilghman v. Hunter, 167 F.2d 661 (10th Cir. 1948), and the other Tenth Circuit cases to like effect, to deny habeas corpus relief:

"The entire petition in support of petitioner's application for a writ of habeas corpus is barren of any allegation that the alleged perjured testimony was knowingly, wilfully, and intentionally used to secure a conviction, and is further barren of any allegation that the prosecuting authorities or the presiding trial judge knew that the witnesses were perjuring themselves, and the absence of such allegations forecloses this Court from granting the relief prayed for in the petition filed herein so, therefore, the application for a writ of habeas corpus is hereby denied." Kowalak v. Frisbie, *supra,* 93 F.Supp. at 778.

More recently, the same problem was before Chief Judge Frank W. Wilson of the Eastern District of Tennessee in Hoffa v. United States, 339 F.Supp. 388 (E.D.Tenn.1972). Without reviewing the complicated history of that case, suffice it to say that at the time in question, Judge Wilson had before him a motion for new trial filed on behalf of petitioner Hoffa. In his petition Hoffa relied upon the principle that the "Government may not knowingly use false testimony to obtain a criminal conviction", citing Napue v. Illinois, *supra.* Judge Wilson reviewed the allegations of perjury which were made in the petition and found that there was no basis for the charge of knowing use of perjured testimony by the government. Hoffa v. United States, *supra,* 339 F.Supp. at 398.

In treating knowledge by the government as an essential element in estab-

**5.** See, for example dissent in United States v. Hendricks, 213 F.2d 922, 943 (3rd Cir. 1954); United States v. Walsh, 174 F.2d 49, 59 (7th Cir. 1949); United States v. Ragen, 86 F.Supp. 382, 390 (N.D.Ill.1949). In Imbler v. Craven, 298 F.Supp. 795 (C.D.Cal.1969), United States District Judge Warren J. Ferguson dealt at length and favorably with Jones v. Commonwealth, *supra,* while recognizing that the current law in the Ninth Circuit is to the contrary and "that 'knowledge' by the prosecution is required to support a claim of denial of due process based upon the existence of prejudicial perjured testimony in a criminal trial", *Imbler, supra,* 298 F.Supp. at p. 805. Judge Ferguson also recognized, as we have earlier, that Mesarosh v. United States, *supra,* was based upon supervisory powers of federal courts rather than constitutional due process requirements.

Jones v. Commonwealth, *supra,* was cited by Circuit Judge William E. Miller, sitting by designation in the United States District Court for the Middle District of Tennessee, in Leighton v. Neil, 317 F.Supp. 959 (1970), but the specific issue of perjured testimony was not present in that case and Judge Miller noted particularly "that evidence given by the state's attorney general was afforded great weight by both the district judge and the Sixth Circuit". 317 F.Supp. at 961. See also Sharpe v. Commonwealth, 135 F.2d 974 (6th Cir. 1943), wherein Judge Simon discussed Jones v. Commonwealth noting that *Jones* involved "exceptional circumstances, of peculiar urgency". In *Sharpe,* the issue of perjured testimony was not present, and the *Jones* holding in that regard was neither overruled nor reaffirmed.

lishing a denial of due process, Judge Wilson observed:

"A matter to note at this point, however, is that it is the *knowing use* by the Government of false evidence that constitutes the denial of due process. An allegation of perjury, apart from an allegation of knowing use by the Government of that perjury, constitutes no basis for habeas corpus or coram nobis relief as it alleges no error of constitutional dimensions. The credibility of witnesses is ordinarily for trial by the jury in the criminal trial. False evidence and perjury are matters that may be raised on the trial and on motions for a new trial, but not in habeas corpus, Section 2255, or other post-conviction petitions. Otherwise every criminal conviction other than a plea of guilty would be subject to repetitious retrial on post-conviction petitions long after the criminal trial had occurred and long after time had erased both memories and witnesses, for few persons convicted of crime do not contend that something untrue was said in their trial." Hoffa v. United States, *supra,* 339 F.Supp. at 392–393.

While the opinions of the district courts within the circuit are of great value, they cannot be said to be precedent controlling upon this court. However, in its affirmance of Judge Wilson's decision, this court in Hoffa v. United States, 471 F.2d 391 (6th Cir. 1973), at page 393, expressly stated "As to the allegations of perjury, we affirm for the reasons stated by Judge Wilson. 339 F.Supp. 392–399."

We believe it is significant as well that even the dissent in that case, as well as in the previous appeal, United States v. Hoffa, 437 F.2d 11 (6th Cir. 1971), went not to the principles set forth by Judge Wilson and adopted by the majority, but to whether Napue v. Illinois, *supra,* required a remand for an evidentiary hearing to determine "whether the Government knowingly used perjured testimony in the original trial." United States v. Hoffa, 437 F.2d at 19.

We do not conclude that it is necessary for us to overrule Jones v. Commonwealth, *supra.* An examination of the facts in that case would convince us even as it did that court that the petitioner's right to Fourteenth Amendment due process had, indeed, been violated. It must be true now, as we believe it always has been true, that particular rules which assist courts in the day-to-day application of the principles of due process must from time to time give way where they themselves are inconsistent with the overriding concepts of due process as set forth in Hebert v. Louisiana, *supra,* 272 U.S. at 316, 47 S.Ct. at 104:

"  .  .  . the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions  .  .  ."

Thus, while we are unable to approve the precise language quoted, *supra,* from *Jones,* as a continuing guideline, it by no means follows that the court in that case erred in granting relief, especially where there appeared to be a governmental confession of error, but no machinery within the state system by which to repair it.

The D. C. Circuit was confronted with this same problem in Hodge v. Huff, 78 U.S.App.D.C. ·329, 140 F.2d 686 (1944). In that case the court, while recognizing the urgency of the unique circumstances in *Jones,* declined to adopt its result as a general rule for habeas corpus cases involving allegations of perjury. Noting that in *Jones,* (1) the prisoner was under the sentence of death, (2) strong evidence of perjury was produced, (3) the prosecution confessed error, (4) the door of executive clemency had been closed, and (5) that more effective assistance of counsel might have uncovered the perjury, the court in *Huff* stated:

"Whether or not that decision was proper upon its facts, it finds no counterpart in the present case." 140 F.2d at 688.

The D. C. Circuit went on to approve, as the general requirement, the necessity of a showing of prosecutorial involvement in the perjury.

We agree.

■ Since the issue presented to the district court was one addressed to the discretion of the state trial judge and to the appellate courts of Michigan, and did not present a denial of the right to due process under the Fourteenth Amendment, it was not necessary for the district judge to have held an evidentiary hearing. Neither is it necessary for us to determine the adequacy under Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), or under 28 U.S.C. § 2254(d) of the post-trial fact finding procedures of the state court. The issue before him was discretionary and not constitutional.

> "Where newly discovered evidence is alleged in a habeas application, evidence which could not reasonably have been presented to the state trier of facts, the federal court must grant an evidentiary hearing. Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus. Also, the district judge is under no obligation to grant a hearing upon a frivolous or incredible allegation of newly discovered evidence." Townsend v. Sain, *supra,* at 317, 83 S.Ct. at 759.

Accordingly the judgment of the district court is affirmed.

McCREE, Circuit Judge (dissenting).

I respectfully dissent, and I would reverse the judgment of the district court and remand the case for an evidentiary hearing on the question whether the defense witnesses were so terrorized in the courthouse that they perjured themselves or refused to testify because of fear for their safety. The affidavit of trial defense counsel states that he was made aware of the threats made by a prosecution witness and that he communicated this fact to the trial judge. The affidavits of several intended defense witnesses that their lives were threatened if they dared to testify and that they did not testify out of fear, or testified falsely, support defense counsel's af-

fidavit. According to some of the affiants, they had been sworn as witnesses, and during a recess of the trial, were approached and terrorized outside the very door of the courtroom in which the trial was in progress. Others were threatened before they testified and some were so terrified that they left the courthouse and did not testify.

If these representations are true, there can be no doubt that there was a denial of the fundamental fairness guaranteed by the Fourteenth Amendment. Persons who attend our courts for the purpose of testifying must be protected from terror in the corridors. *See* Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923). Since this issue was presented to and rejected by the state courts without a hearing, People v. Burks, 30 Mich.App. 102, 186 N.E.2d 18 (1970), the district court should have held an evidentiary hearing to see whether these incidents occurred and whether the state trial judge took appropriate measures to safeguard witnesses in the courthouse. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).