535 F.2d 383
 UNITED STATES of America ex rel. James WILLIAMS, Petitioner-Appellant,
v.
Daniel P. WALKER, Governor of the State of Illinois, and
Dave Brienton, Sup. Warden, Stateville Branch at
Joliet, Ill., Respondents-Appellees.
 No. 75-1956.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 8, 1976.
Decided May 20, 1976.
 
 Elliott Samuels, Chicago, Ill., for petitioner-appellant.
 William J. Scott, Atty. Gen., Donald Hubert, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.
 Before PELL and SPRECHER, Circuit Judges, and JAMESON, Senior District Judge.*
 PER CURIAM:
 
 
 1
 James Williams has appealed from an order denying his petition for a writ of habeas corpus, contending (1) that the district court erred in dismissing the petition without an evidentiary hearing, and (2) that the introduction of false testimony at petitioner's trial deprived him of his right to due process of law.
 
 
 2
 Williams was convicted in the Circuit Court of Cook County, Illinois of murder, armed robbery, and attempted robbery. The convictions were affirmed by the Illinois Appellate Court. People v. Williams, 3 Ill.App.3d 1, 279 N.E.2d 100 (1971). Williams filed a petition in state court for post-conviction relief pursuant to the Illinois Post-Conviction Hearing Act, Ill.Rev.Stat.1967, ch. 38, § 122-1 et seq., alleging that his convictions had been obtained "through the use of false and perjured testimony". The petition was dismissed by the same judge who presided at petitioner's original trial. This ruling was affirmed by the Illinois Appellate Court. People v. Williams, 11 Ill.App.3d 50, 295 N.E.2d 487 (1973). Williams then filed the instant pro se petition for federal habeas corpus relief under 28 U.S.C. § 2254 et seq.
 
 Proceedings in State Court
 
 3
 a. Trial
 
 
 4
 Williams and three other men were charged with the commission of three armed robberies, an attempted robbery, and murder as the result of the robbery of several passengers on a Chicago Transit Authority bus, during which a woman passenger was shot to death. Williams was tried separately and convicted on all five counts of the indictment.
 
 
 5
 The State presented evidence to show that there were eight or ten passengers on the bus, including Williams and his three co-indictees who had boarded the bus together. When the bus made a stop, one of the four, later identified as Williams, went to the front of the bus, pulled out a sawed-off rifle, and ordered passengers to turn over their valuables. The other three men began taking money from the driver and passengers. One woman who refused to give up her purse was shot to death by one of Williams' co-indictees. Thereupon all of the robbers fled the bus, running in all directions. Early the next morning police officers arrested Williams, who was dressed in clothes corresponding to a description given by the passengers of the man who held the sawed-off rifle. At the time of his arrest Williams had a sawed-off rifle in the waistband of his pants.
 
 
 6
 At the trial five of the passengers, including one of the co-indictees, positively identified Williams as the man carrying the sawed-off rifle. In addition other witnesses identified the rifle and clothing found in Williams' possession, although they were unable to swear that Williams was the man carrying the gun.
 
 
 7
 Williams was the only witness in his defense. He testified that he had been on the bus as a passenger and had run from the bus at the same time that the robbers fled. He said that he bumped into one of the robbers nearby and after a scuffle disarmed the man and thus obtained the rifle. Williams testified further that he was a night watchman employed by Central Watch Service and that he had been issued a pistol from his employer which was far more concealable than a rifle.
 
 
 8
 In rebuttal the State called Samuel Smith, personnel director of Central Watch Service. Smith testified that his records included an application from a James Williams, who was hired, but failed to report for work, and in fact had never worked for the company. In closing argument the prosecution emphasized Smith's testimony and its reflection on Williams' credibility.
 
 
 9
 b. Post-conviction Petition
 
 
 10
 Williams' post-conviction petition in state court was based on the alleged use of perjured testimony by Samuel Smith. Attached to the petition was a check stub showing that Williams had in fact been paid $106.40 by the Central Watch Service. The trial judge held a hearing on petitioner's motion and received two additional exhibits: a reproduction of a W-2 Form indicating that Williams had been paid by Central Watch Service and a statement from a state agency indicating that Williams had a Social Security number corresponding to that shown on the W-2 Form and that Williams had also used another name under the same Social Security number. At the hearing petitioner's counsel did not contend that the State knew that Smith's testimony was false, but rather claimed "a violation of a constitutional right, Fourteenth Amendment right to a fair trial, to be tried and convicted with truthful testimony, without perjured testimony. Whether or not it is suborned by the State is irrelevant to Mr. James Williams". Nor did counsel contend that Smith had "lied". He simply claimed Smith was "wrong".[1]
 
 
 11
 At the conclusion of the hearing, after considering arguments of counsel, the trial judge dismissed Williams' petition, stating:
 
 
 12
 ". . . I have no doubt that a(n) honest mistake was made by the gentleman from the Central Watch Service, not the slightest. (A) mistake was made, Central Watch Service made it, and it certainly did not help the defendant. But I believe that that was incidental to the entire trial, . . . I believe the verdict would have been the same, the result would have been the same irrespective of the testimony of the gentleman from Central Watch."
 
 
 13
 The Illinois Appellate Court held that Smith's testimony was erroneous, but not perjury, that the prosecutor was not aware at the time that the testimony was erroneous, and that the testimony did not contribute to Williams' conviction. (Abstract of opinion, 295 N.E.2d 487).
 
 Proceedings in District Court
 
 14
 The pro se petition for habeas corpus alleged that the State knowingly allowed a rebuttal witness to give false testimony. In a memorandum opinion entered April 7, 1975 the district court stated that, "Because of the substantiality of this allegation, it will be necessary to hold an evidentiary hearing before deciding how to resolve the petition". The court properly recognized that it "would undoubtedly be error for a prosecutor to knowingly allow false testimony into evidence and then fail to apprise the court and the jury of the falsity".[2] The memorandum concluded:
 
 
 15
 "For the reasons stated herein, an evidentiary hearing may be required in which petitioner will have the burden of establishing each of the following propositions as prerequisites to the granting of the writ: (1) the testimony given by Samuel Smith was false; (2) the prosecutor actually knew it was false at the time it was given or at the time he gave his closing argument.
 
 
 16
 "Petitioner Williams will be given sixty days to conduct discovery relating to the two above mentioned issues, and on the basis of such discovery, he may renew his request for a full evidentiary hearing."
 
 
 17
 In an order entered September 23, 1975, following status hearings on July 1, 1975 and September 23, 1975 the court noted the provision for discovery in the April 7, 1975 order and that "petitioner's counsel has admitted in open court that petitioner has been unable to establish, by further discovery as granted by this court, any additional evidence relating to the two issues listed in the . . . April 7, 1975, opinion". Petitioner's renewed motion for a full evidentiary hearing was denied and the cause dismissed.
 
 
 18
 Was an Evidentiary Hearing Required?
 
 
 19
 Under Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770, 786 (1963), evidentiary hearings must be granted to habeas corpus petitioners if the record indicates that the application was not afforded a full and fair fact hearing at the state level or there is a substantial allegation of newly discovered evidence. It is clear from the record that Williams received adequate consideration of his claims at the state level. In his petition for habeas corpus Williams did not allege newly discovered evidence, except for the conclusory allegation that the state used false testimony. As this court held in United States ex rel. Pierce v. Cannon, 508 F.2d 197, 205 (7 Cir. 1974), the need for an evidentiary hearing is obviated where no new evidence has been brought to the attention of the court in support of the petitioner's contentions. Here the district court, following Harris v. Nelson, 394 U.S. 286, 298-300, 89 S.Ct. 1082, 1090-1091, 22 L.Ed.2d 281, 290-291 (1969), granted petitioner ample opportunity to conduct discovery to substantiate his allegations that the state knowingly used false testimony. Petitioner's attorney was unable to find any evidence. Instead, the district court had before it an affidavit by the prosecuting attorney stating that witness Smith had been called as an afterthought, that Smith's testimony was based on personnel records rather than personal knowledge, and that the State did not know that the testimony of Smith was incorrect. Under these circumstances an evidentiary hearing was not required since it obviously would have served no purpose.
 
 
 20
 Was Williams Denied Due Process Because of Smith's Testimony?
 
 
 21
 In order to prevail in a habeas corpus proceeding a petitioner must show that he is in custody pursuant to the judgment of a State court obtained "in violation of the Constitution or laws or treaties of the United States". 28 U.S.C. § 2254(a). Relying on Jones v. Kentucky, 97 F.2d 335, 338 (6 Cir. 1938), in which it was held that a state's unintentional use of perjured testimony raises a federal question sufficient to warrant habeas relief, petitioner argues that the district court should have found that the introduction of the false rebuttal testimony in itself constituted a denial of due process requiring a new trial. As petitioner candidly admits, however, the weight of authority is against his position.
 
 
 22
 Virtually all of the circuits[3] adhere to the rule which was summarized by this court in United States v. Jakalski, 237 F.2d 503, 504-505 (7th Cir. 1956), cert. denied 353 U.S. 939, 77 S.Ct. 817, 1 L.Ed.2d 761 (1957):
 
 
 23
 "The introduction of perjured testimony without more does not violate the constitutional rights of the accused. It is the knowing and intentional use of such testimony by the prosecuting authorities that is a denial of due process of law."
 
 
 24
 As the State points out, cases which have considered the Jones v. Kentucky doctrine have narrowly limited its application. In Hodge v. Huff, 78 U.S.App.D.C. 329, 140 F.2d 686, 688 (1944), the court declined to adopt the Jones rule, finding it to be valid only in light of the facts upon which it was based: (1) a prisoner sentenced to death; (2) substantial evidence of perjury; (3) admitted error by the prosecution; (4) no possibility of executive clemency; and (5) lack of effective counsel. Recently, in Burks v. Egeler, 512 F.2d 221, 229 (6 Cir. 1975), the Sixth Circuit, which decided Jones, found itself no longer able "to approve of (its) precise language . . . as a continuing guideline". Similarly in Imbler v. Craven, 298 F.Supp. 795, 802-809 (C.D.Cal.1969), the court, while citing Jones with approval, was able to find evidence that the prosecution in the case before it "had reason to believe or in fact knew" that false evidence of a material nature was used. 298 F.Supp. at 808.[4]
 
 
 25
 Petitioner urges in the alternative that we apply the rule of Larrison v. United States, 24 F.2d 82, 87-88 (7 Cir. 1928), which established criteria for granting new trials where false testimony is alleged:
 
 
 26
 "(a) The court is reasonably well satisfied that the testimony given by a material witness is false. (b) That without it the jury might have reached a different conclusion. (c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial." (Emphasis in original.)
 
 
 27
 The Larrison rule, however, is not applicable here. First, the doctrine is generally applied to motions for a new trial under Rule 33, F.R.Crim.P. (See 2 Wright, Federal Practice and Procedure: Criminal § 557 p. 525 (1969)) and not to habeas corpus proceedings where a violation of constitutional rights must be shown. Apparently only one case, United States ex rel. Rice v. Vincent, 491 F.2d 1326 (2 Cir. 1974), cert. denied 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974), has considered the application of Larrison to a habeas petition. In that case, however, the court noted that it was applying the doctrine "arguendo" and primarily because police and prosecutorial misconduct had been alleged.[5] 491 F.2d at 1331-1332. Second, the testimony in question here does not meet the materiality standards enunciated in Larrison. We cannot agree that without the testimony by Smith petitioner might have been acquitted. The trial judge found that "the result would have been the same irrespective of (Smith's) testimony". The Appellate Court concluded that Smith's testimony "did not contribute to (Williams') conviction".
 
 
 28
 The district court properly required petitioner to show that the testimony he complains of was perjurious and introduced knowingly by the prosecution. The most Williams has been able to show is that the rebuttal witness was mistaken and his testimony was incorrect. Under prevailing constitutional standards this showing is not sufficient for a writ of habeas corpus to issue. The dismissal of the petition is affirmed.
 
 
 29
 AFFIRMED.
 
 
 
 *
 Senior Judge William J. Jameson of the District of Montana is sitting by designation
 
 
 [1]
 Counsel said in part: "Now, I don't care what this man's motives were. I don't say he lied. What I am saying is he was wrong. Now, I don't know how screwed up their records are or what their problems are at the Central Watch Company. But James Williams was the name, the social security number is right, and the employee number was available."
 
 
 [2]
 Citing Mooney v. Holohan, 294 U.S. 103, 112-113, 55 S.Ct. 340, 341-342, 79 L.Ed. 791, 794-795 (1935); Miller v. Pate, 386 U.S. 1, 7, 87 S.Ct. 785, 788, 17 L.Ed.2d 690, 694 (1967); Donnelly v. De Christoforo, 416 U.S. 637, 646, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431, 438 (1974)
 
 
 [3]
 See, e. g., Kyle v. United States, 266 F.2d 670, 674 (2 Cir. 1959); United States v. Jenkins, 281 F.2d 193, 194 (3 Cir. 1960); Clark v. Warden, 293 F.2d 479, 482 (4 Cir. 1961), cert. denied, 369 U.S. 877, 82 S.Ct. 1149, 8 L.Ed.2d 279 (1962); Jackson v. United States, 384 F.2d 375, 376 (5 Cir. 1967), cert. denied 392 U.S. 932, 88 S.Ct. 2298, 20 L.Ed.2d 1392 (1969); Holt v. United States, 303 F.2d 791, 794 (8 Cir. 1962), cert. denied 372 U.S. 970, 83 S.Ct. 1095, 10 L.Ed.2d 132 (1963); Marcella v. United States, 344 F.2d 876, 880 (9 Cir. 1965), cert. denied 382 U.S. 1016, 86 S.Ct. 630, 15 L.Ed.2d 531 (1966); Wagner v. Hunter, 161 F.2d 601, 602 (10 Cir. 1947), cert. denied 332 U.S. 776, 68 S.Ct. 39, 92 L.Ed. 361 (1948). All of the Supreme Court cases holding that a due process issue was presented (see note 2), involved the "knowing use" of false evidence
 
 
 [4]
 In Kelly v. Ragen, 129 F.2d 811, 814 (7 Cir. 1942), this court observed that Jones v. Kentucky was a case of "exceptional urgency". This court has never followed the rule established in Jones
 
 
 [5]
 In Vincent the court held that a recantation of testimony alone without proof of prosecutorial misconduct was insufficient to support the petition for habeas corpus