THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES WILLIAMS (Impleaded), Defendant-Appellant.

(No. 55312;

First District—November 29, 1971.

*Rehearing denied December 22, 1971.*

Gerald W. Getty, Public Defender, of Chicago, (Herbert Becker, Ronald P. Katz and James J. Doherty, Assistant Public Defenders, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Michael J. Goldstein, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

An indictment was returned against James Williams (hereinafter "defendant,") Herman Ray Lockett, Andrew V. Prim and Grover C. Thomas, charging them with the commission of three armed robberies, an attempt robbery and a murder. Defendant was found guilty by a jury of the commission of all five crimes and was sentenced to terms of fifty years to one hundred years in the penitentiary on the murder charge and on each of the armed robbery charges, and to a term of five years to ten years in the penitentiary on the attempt robbery charge, all five sentences to run concurrently. Defendant appeals.

Mitchell Bateast testified for the People that at about 6:30 P.M. on November 22, 1968, he was operating a Chicago Transit Authority bus in a northerly direction along Damen Avenue approaching Fulton Street in Chicago. He stated that at the time there were eight to ten passengers aboard the bus. As the witness drove past Fulton Street, an elderly passenger walked to the front of the bus and berated the witness for failing to stop the bus upon the passenger's signal. The witness thereupon stopped the bus to allow the passenger to alight, when "a man

got up and blocked the front exit door." The man blocking the doorway then drew a sawed-off rifle from beneath his clothing and stated to the witness, "Let's have it."

Mr. Bateast testified that several seconds after the man holding the rifle announced the holdup, Bateast heard a gunshot emanate from the rear of the bus. The man holding the rifle stated, "Hurry up, hurry up," and a few seconds later a man whom the witness identified at trial as Andrew Prim arrived at the front of the bus, took the money changer from the witness, and exited the bus at the front door together with the man holding the rifle. The witness declined to make an identification of the man holding the rifle, but he testified that the man was clad in a long coat and khaki pants, and that he wore his hair in a "natural." The witness testified that after the men left the bus he notified the police.

Gurnsey Romaine testified for the People that he was a passenger on the bus at the time of the hold-up and that he knew one of the men who participated in the hold-up, Andrew Prim. He stated that Prim sat next to him on the bus, that he heard someone in the front of the bus call out: "Now," that several boys rose from their seats simultaneously, and that one of the boys shot a female passenger, a Mrs. Zielinski, with a pearl handled pistol.

Willie Reed testified for the People that he was the passenger who was arguing with the bus driver concerning the driver's failure to stop the bus upon the witness' signal. He testified that while he was arguing, a man holding a rifle crossed in front of him and announced a hold-up. The witness was told to be seated and he sat down. The witness testified that he heard arguing coming from the rear of the bus, after which he heard a gunshot.

Audrey Harris Pierce testified for the People that she was seated in the middle of the bus with her sister, Dorothy Harris, when she observed a man walk to the front of the bus with a rifle and announce a hold-up. The witness identified that man as defendant Williams. She testified that she then heard a gunshot after which she observed three men, including defendant, flee the bus. The witness stated that she later attended a line-up at the police station and that she picked defendant Williams out of the line-up as one of the men involved in the hold-up. The testimony of Mrs. Pierce's sister, Dorothy Harris, was essentially the same.

William Giersz, a passenger on the bus, testified for the People that while Willie Reed was arguing with the bus driver, the witness observed defendant Williams holding a rifle and observed a second man approach the front of the bus and announce a hold-up. The man who was with the defendant took the bus driver's money changer and proceeded to the rear of the bus. Thereafter, someone slipped into the seat with the

witness and took the witness' wallet, pocket lighter, and a set of keys. The defendant stood in the front of the bus hollering, "Let's go, ain't got all day." The hold-up men thereupon exited the bus.

Ermelindo Maldonado testified for the People that he was a passenger on the bus and that he observed four men rise from their seats, two moving to the front of the bus and two remaining toward the rear. One of the men in front, whom the witness identified as defendant Williams and as having been clad in a dark coat and khaki pants, pointed a rifle at the bus driver and ordered him to stop the bus. One of the other men, brandishing a pistol, took money and other personal items from the witness. Maldonado further testified that the men then tried to take a wallet or a purse from a female passenger, that the woman refused to turn over the purse, and that the man with the pistol cursed her and shot her. The four men then exited the bus, two from the front exit and two from the rear exit.

Grover Thomas, defendant's co-indictee, testified for the People that he was acquainted with defendant Williams, Andrew Prim, and Herman Ray Lockett. He stated that he and the other three men boarded the bus at approximately 6:20 P.M. on November 22, 1968, and that the witness occupied a seat with Lockett near the rear exit door while defendant Williams took the "horizonal seat" behind the bus driver. The witness testified that after receiving a signal from Lockett, Williams drew a rifle, got out of his seat and held the rifle on the bus driver. Prim took the driver's money changer while Lockett drew a pistol and took the wallet of Maldonado which he turned over to the witness. Thomas testified that Lockett then "went to the woman and snatched her purse and she snatched back and he shot her." The witness testified that he then exited the bus, discarded the wallet given to him by Lockett and went to the home of a friend where he was later arrested. Thomas further testified that defendant Williams was clad in a long overcoat and khaki pants.

The final witnesses for the People were Chicago Police Officers James Griffin and Richard Sandberg, who stated that they arrested defendant during the early morning of November 23, 1968, at a cocktail lounge. The defendant had the rifle on his person when arrested, and was wearing a long coat and khaki pants. The officers testified that the defendant attempted to explain his possession of the rifle, stating that he was a night watchman and that he carried it in connection with his duties as such.

Defendant Williams testified in his own behalf. He admitted his presence on the bus at the time of the hold-up, but denied any participation therein. He testified that he was riding the bus on his way to visit his girl friend when he observed four male passengers suddenly rise from

their seats and commence robbing passengers. He recognized one of the men as Andrew Prim, a casual acquaintance. Williams testified that Prim was standing in the front of the bus holding a rifle. After a woman passenger was shot, Williams and the men involved in the hold-up all attempted to get out of the bus. Outside the bus, Prim "put the rifle on" the defendant and the defendant wrested it from him. The defendant testified that he then went home, that he went to a lounge with the rifle because he did not know what to do with the weapon, and that he was arrested at the lounge shortly thereafter.

■■ Defendant contends that the evidence adduced by the People was insufficient to sustain their theory of his guilt by accountability. We disagree.

Of the eight eyewitnesses to the incident, five positively and unequivocally identified the defendant as the man standing in the front of the bus who was holding the rifle and who announced the hold-up. While the other three eyewitnesses stated they could not positively identify the defendant as the man holding the rifle, they did not testify that he was not the man. The fact that they did not identify the defendant as the man holding the rifle in no way impairs the credibility of the other five eyewitnesses or the weight to be given their testimony.

Corroborating the eyewitnesses' identification of the defendant as the man holding the rifle during the hold-up was the evidence of his possession of the rifle at the time of his arrest. Further, defendant was wearing a long overcoat and khaki pants when arrested, the same clothing testified to by several of the eyewitnesses as having been worn by the man holding the rifle. There was sufficient evidence adduced by the People from which the trier of fact could find beyond a reasonable doubt that defendant was a participant in, and therefore accountable for, the robberies, the attempt robbery and the murder. Ill. Rev. Stat. 1967, ch. 38, par. 5—2, par. 9—1(a)(3); *People v. Valentine*, 22 Ill.2d 554.

The cases cited by defendant in support of his position are inapposite on their facts from the case at bar. See *People v. Ramirez*, 93 Ill.App.2d 404; *People v. Novick*, 265 Ill. 436; *People v. Shields*, 6 Ill.2d 200.

■■ Defendant next contends that the trial court committed error in sentencing him for "two or more crimes arising out of the same transaction," in that he was sentenced for the crimes of felony murder and attempt robbery of the same person.

The attempt robbery of which the defendant was found guilty was complete when Lockett, defendant's accomplice, attempted to take the purse from Mrs. Zielinski at gunpoint. When Mrs. Zielinski attempted to regain control of the purse, Lockett cursed her and shot her. Two separate and distinct crimes were perpetrated upon Mrs. Zielinski, each

punishable by separate and distinct sentences. See *People v. Johnson,* 44 Ill.2d 463; Ill. Rev. Stat. 1967, ch. 38, par. 1—7(m).

In the case of *People v. Stewart,* 45 Ill.2d 310 cited by defendant, the accused took hold of the victim around the neck, saying "Give me this money" and throwing the victim to the ground; the victim was struck with a blow so hard that several of his teeth were knocked out. In reversing a conviction for aggravated battery after findings of guilty of aggravated battery and attempt robbery, the court on review held that the conduct of which the defendant stood convicted arose out of the "same transaction" and constituted an entire "series of acts." Here, on the other hand, the attempt robbery of Mrs. Zielinski was separate and distinct from the shooting.

In the case of *People v. Thomas,* 127 Ill.App.2d 134, the defendant was found guilty of felony murder. It appears from the *Thomas* case that the defendant and another man entered a tavern, the defendant standing near the front door and his companion approaching the bar. The companion, without uttering a word or otherwise gesturing, shot the bartender, after which the companion stated, "I got him." The two men then fled the scene. The court on review held that there was no evidence showing that the defendant and his companion had entered the tavern to commit a felony and that therefore defendant could not be held accountable for the victim's murder under the felony murder rule. The *Thomas* case is clearly distinguishable from the case at bar.

■■ The defendant next contends that it was error for the trial court to have sentenced him on the armed robbery charges, stating that the evidence shows that he merely stood at the front of the bus holding the rifle whereas the other participants in the holdup took an active part in the proceedings. He reasons that where his "conduct and degree of participation remained the same with respect to all offenses such conduct should not support multiple convictions." It need only be said in this regard that defendant's conduct in holding the weapon and in announcing the hold-up, although he stood in one position and in fact robbed or shot no one, was of such nature as to impose upon him the responsibility for the conduct of all his companions.

Defendant's further contentions, that the People failed to prove his guilt beyond a reasonable doubt and that he was not conclusively identified by some of the eyewitnesses to the incident, have been dealt with above. Further, defendant's attempt to raise minor inconsistencies in the testimony of the People's witnesses, such as which way the defendant's rifle was pointed, which participant used which exit door of the bus, the position of the prosecuting witnesses, and the like, to the level of reasonable doubt is unavailing. The cases cited by defendant in sup-

port of his position are not in point. See *People v. Betts,* 101 Ill.App.2d 322; *People v. Cullotta,* 32 Ill.2d 502; *People v. Ramirez,* 93 Ill.App.2d 404.

■■ Defendant's final contention is that the sentences imposed by the trial court upon the verdicts of guilty of murder and armed robbery were too severe under the circumstances and should be reduced.

In the recent case of *People v. Pantoja,* (Ill.App.2d), 273 N.E.2d 483, this court stated at page 4 of the opinion published in abstract only:

"While the Appellate Court has the power to reduce a sentence imposed by the trial court, that power must be exercised with due caution and only in a proper case, where the penalty imposed constitutes a departure from the spirit and basic purpose of the law. Supreme Court Rule 615(b)(4); People v. Taylor, 33 Ill.2d 417, 424. It must therefore appear from the record that the sentence is excessive and not justified under any reasonable view taken from the record.

"Furthermore, * * * excessive minimum sentences may defeat the effectiveness of the parole system by making mandatory the incarceration of the defendant long after effective rehabilitation has been accomplished. Abernathy, Sr. v. People, 123 Ill.App.2d 263; People v. Lillie, 79 Ill.App.2d 174."

The record in the instant case discloses that the defendant was twenty-three years of age at the time of the trial and that he had a past criminal record consisting solely of a misdemeanor conviction for the unlawful use of a knife, for which he received a fine of $100. The sentence in the misdemeanor case was imposed by the trial judge presiding in the instant case at the time he was sitting in Boy's Court.

Without minimizing the serious nature of the crimes of which defendant now stands convicted, it is evident from the record that the imposition of minimum sentences of fifty years in the penitentiary, in light of defendant's age and his past record, would frustrate, as a practical matter, any possibility of rehabilitation of the defendant. Lesser minimum sentences on the armed robbery and on the murder verdicts are justified. The maximum sentences imposed by the trial court will remain intact, and in that way the parole board in the future will have adequate latitude within which to determine whether defendant has been sufficiently rehabilitated to re-enter society. Under all the circumstances of this case the minimum sentences imposed upon the verdicts of guilty of murder and armed robbery should be reduced to a term of not less than thirty years in the penitentiary.

For these reasons the sentences imposed for the crimes of murder and of armed robbery are reduced to terms of not less than thirty years nor more than one hundred years in the penitentiary and as modified, the judgments are affirmed. Also for the foregoing reasons the judgment en-

8

tered upon the verdict of guilty of attempt robbery is affirmed. The sentences on all five judgments are to run concurrently with each other.

Judgments of guilty of murder and of three several armed robberies modified and as modified, affirmed.

Judgment of guilty of attempt robbery affirmed.

LYONS and GOLDERG, JJ., concur.