THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE JOHNSON (Impleaded), Defendant-Appellant.

(No. 60460;

First District (2nd Division)—June 10, 1975.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Thomas J. Reynolds, and Mary Jane Theis, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

Eugene Johnson, defendant, was found guilty after a jury trial of the offenses of murder and three armed robberies; he was sentenced to death on the murder conviction upon recommendation of the jury, and also to three concurrent terms of 50 years to 100 years on the armed robbery convictions. On appeal to the Illinois Supreme Court, the judgment entered upon the four convictions was affirmed, but the sentences imposed were vacated and the cause remanded for a new hearing in aggravation and mitigation and for resentencing; the death sentence was vacated pursuant to *Furman v. Georgia* (1972), 408 U.S. 238, 33 L.Ed.2d 346, 92 S.Ct. 2726, and the other three sentences were vacated in order that the trial court could consider all four convictions together in arriving at a suitable penalty and to permit the imposition of different sentences if desired. (See *People v. Johnson* (1973), 55 Ill.2d 62, 302 N.E.2d 20.) After an extensive hearing in aggravation and mitigation on remand, defendant was resentenced by the original trial judge to four concurrent terms of 40 years to 60 years. He appeals, contending that the sentences thus imposed are excessive in light of his age, the absence of any prior criminal record and the testimony as to manifested rehabilitation during a period of almost 6 years in the penitentiary.

Defendant and one Edward Clay committed the offenses in question during a holdup and shooting in a Chicago tavern on the night of 18 April 1968. Both men were armed with shotguns, and while Clay, who

had entered the tavern by the front door, remained by that door, defendant who had entered by the back door systematically robbed each of several patrons and took money from the cash register. The two men left the premises, and immediately thereafter, Clay, who resided in the vicinity of the tavern but who was masked during the incident, reentered the tavern and shot and killed the female co-owner who had merely been sitting near the front door. Defendant was tried before a jury, with the results indicated above. Edward Clay was tried in a separate bench trial before a judge other than the judge who presided over defendant's trial; he was found guilty of the four offenses and was sentenced to terms of 40 years to 60 years on each offense. The judgment as to Clay was affirmed on appeal to the supreme court. *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.

During the remand hearing in aggravation and mitigation on 21 January 1974, the court heard extensive evidence in mitigation and in support of defendant's recommendation that minimum sentences should be the absolute statutory minimums for the respective offenses. An Illinois State Representative appeared on defendant's behalf as a disinterested witness, and testified that defendant, despite his living on death row, had maintained a good morale and had advanced his education. Defendant himself testified that he had improved himself while in the penitentiary because he realized that he had to change his attitude from that which he had when he first entered. The State admitted that defendant's experiences in the penitentiary could be "separated" from the facts which surrounded the commission of the offenses in question, but argued that he was nevertheless accountable for the "vicious, cold-blooded killing" of the victim and had personally committed the armed robberies. The State's recommendation of concurrent sentences of 40 years to 120 years on the murder conviction and of 20 years to 60 years on the armed robbery convictions was based solely upon the facts surrounding the offenses themselves. The trial court, while noting that Clay had involved defendant in the commission of the crimes because Clay lived not far from the tavern and was known in the area whereas defendant lived elsewhere and was not known in the area, nevertheless thought that, for sentencing purposes, defendant could not be placed "into a category" different from that of Clay. Accordingly, defendant received the same terms of sentence as had Clay.

■■ In making a determination of the extent of the penalty to be imposed upon the commission of an offense, the trial court must consider the punishment warranted by the facts and character of the offense, the need for the protection of the public, and the defendant's potential for rehabilitation; in the latter context, the minimum sentence imposed upon

a particular defendant must not be such as to frustrate the effectiveness of the parole system, by making mandatory his incarceration long after effective rehabilitation may have been accomplished. See *People v. Williams* (1971), 3 Ill.App.3d 1, 7, 279 N.E.2d 100, quoting with approval from *People v. Pantoja* (1971), 133 Ill.App.2d 548, 273 N.E.2d 483.

One of the objectives of the Criminal Code of 1961 was to prescribe penalties which were not only proportionate to the crime (a requirement imposed on the legislature by article II, section 11, of the 1870 Illinois Constitution) but which also recognized differences in the rehabilitation potential of the offender. (Ill. Rev. Stat. 1963, ch. 38, par. 1–2(c).) The factor of rehabilitation is now incorporated in article I, section 11, of the 1970 Illinois Constitution (effective 1 July 1971) as follows: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." [1] The legal effect of this addition has been carefully expounded by this court in *People v. Knox* (1972), 3 Ill.App.3d 1050, 1054, 280 N.E.2d 10. And see generally Note, *Section 11 of the Bill of Rights: Rehabilitation Potential and Sentencing*, 8 John Marshall J. Prac. & Proc. 269—293 (1974).

The interrelationship between a maximum sentence and the factor of potential rehabilitation and the impact of that interrelationship on the effectiveness of the parole system have been noted in *People v. Lillie* (1967), 79 Ill.App.2d 174, 178, 223 N.E.2d 716, 719, where the court said: "Adequacy of the punishment should determine the minimum sentence, with the maximum dependent on the court's divination as to the length of time required to achieve rehabilitation." But the court in *Lillie*, in relation to the maximum sentence, appears to have had in mind the effectiveness of the parole authorities in cases in which no potential for rehabilitation manifests itself during incarceration, because the court also noted that neither a trial court nor a reviewing court "is possessed of prescience, and since the judicial function terminates upon the judgment's becoming final, the Parole and Pardon Board is the only governmental agency in a position to observe and determine to what extent incarceration has achieved rehabilitation."

And despite the court's statement that "[a]dequacy of the punishment should determine the minimum sentence," the court in the second following paragraph also recognized the interrelationship between a minimum sentence and the factor of rehabilitation and the impact of that interrelationship on the effectiveness of the parole system when it said: "Excessive minimum sentences, imposed by the courts, may defeat the effec-

---

[1] This Constitutional change was not brought to the attention of the court in the 1974 hearing in aggravation and mitigation.

tiveness of the parole system by making mandatory the incarceration of a prisoner long after effective rehabilitation has been accomplished." (*People v. Lillie* (1967), 79 Ill.App.2d 174, 179, 223 N.E.2d 716, 719.) The court then reduced a sentence for burglary (which had been imposed on the defendant upon revocation of probation) of not less than 12 years nor more than 18 years to a sentence of not less than 5 years nor more than 18 years, noting that "[s]ince as above stated, we cannot predict with accuracy the progress of this defendant's rehabilitation, we do not modify the maximum sentence imposed."

We conclude that the factor of rehabilitation is interrelated with both the maximum and minimum sentence (as are, in our further opinion, the factors of punishment and of protection of the public). The difference is that the court must predict the potential for rehabilitation (from known factors such as age, prior criminal record, attitude during trial and during the hearing on aggravation and mitigation, education, family ties, community involvement) whereas the parole authorities know the rehabilitation which has or has not been manifested during incarceration.

■■ The instant case, however, is unusual in that the court had before it the testimony of an Illinois State Representative and of defendant relating to defendant's manifested rehabilitation during a period of almost 6 years of incarceration, which testimony was uncontradicted by the State. In terms of the seriousness of the offenses of which defendant was convicted and from which the public required protection, it is clear, as the trial judge commented, that defendant could not be considered as in a category different from that of Clay. The facts clearly demonstrate defendant's active, knowing and voluntary participation in the offenses; the armed robberies had been planned and the shooting may be said to have been reasonably foreseeable in view of Clay's determination not to be recognized. Defendant and Clay perpetrated a senseless and brutal killing of the deceased and a deliberate robbery of the other victims. The concurrent maximum terms imposed by the trial court upon resentencing are therefore appropriate.

But in terms of rehabilitation, the uncontradicted testimony of the Illinois State Representative and of defendant as to what defendant had accomplished during almost 6 years of incarceration (plus the testimony of defendant's mother and sister that, upon his release, he would be gladly received into a supportive family) does appear to place defendant in a category different from that of Clay, especially in view of the following comment of the sentencing judge: "I had the feeling that some of the defendants who [*sic*] I did not try, but who were before me for a long time, were beyond redemption." The testimony was that defendant had been a good prisoner and had maintained good morale during his

term in the penitentiary, even when he had been on death row; that he had formed the belief that he must entertain a different attitude if he is to reenter society; and that he advanced his education during the 6-year period. Moreover, having been convicted at the age of 17 years, defendant is still a relatively young man, who had no history of criminal behavior prior to the offenses in question. As this court, speaking through Mr. Justice Leighton, said in *People v. Robinson* (1971), 3 Ill.App.3d 267, 272, 278 N.E.2d 137, 140:

> "Under our law guilt is personal; sentence is individual. One purpose of our criminal code is to '[p]rescribe penalties which are proportionate to the seriousness of offenses and which permit recognition of differences in rehabilitation possibilities among individual offenders * * *.' (Ill. Rev. Stat. 1967, ch. 38, par. 1—2(c).) Our system of criminal justice does not contemplate that in every case there be similar punishment of persons similarly guilty of the same offense. Modern penology teaches that punishment should fit the offender, not merely the crime."

In summary, we find from the record in the instant case:

(1) The testimony at the 1974 hearing in aggravation and mitigation included testimony, not only as to potential rehabilitation, but also testimony as to manifested rehabilitation during a period of almost 6 years of incarceration;

(2) At that hearing, the constitutional change relative to the factor of rehabilitation was not brought to the attention of the court;

(3) The record does not affirmatively show that the court, in resentencing, took into consideration the factor of potential and of manifested rehabilitation;

(4) On the contrary, there is what could be considered as an indication that the court did not take that factor into consideration in that the court imposed on defendant the same minimum terms of imprisonment as had been imposed on Clay by another judge, because the court thought that, for sentencing purposes, defendant could not be placed into a category different from that of Clay despite the fact that the court also thought some of the defendants (possibly including Clay), whom the court did not try but who had been before the court for a long time, were beyond redemption.

Defendant asks us to reduce the concurrent sentences of 40 to 60 years pursuant to our authority to do so under Supreme Court Rule 615 (b)(4). (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(4).) We refuse to

do so because that authority is to be exercised with caution and because in our opinion the trial court is still in a better position to determine the appropriate minimum concurrent sentences than we are.

■■ On this appeal, defendant does not contend that the 1974 hearing in aggravation and mitigation as such was inadequate in any respect; hence, no new or further hearing is requested and none need be had. Defendant's sole contention is that the concurrent sentences were excessive in view of the testimony as to his age, the absence of any prior criminal record on his part, and his potential and manifested rehabilitation. Focusing on the factor of potential (and in this case manifested) rehabilitation, as the twin objective of the Criminal Code of 1961 as to penalties and now as the twin requirement of the 1970 Illinois State Constitution as to penalties, we find, in the imposition of the minimum concurrent sentences, no express indication that the said rehabilitation factor was considered and possible indication that it was not considered.

For the foregoing reasons, we affirm the maximum concurrent sentences; without finding that the minimum concurrent sentences are excessive, we vacate them and remand the cause to the sentencing court for the imposition of such minimum concurrent sentences (not greater than 40 years) as that court may find appropriate after expressly taking into account the rehabilitation factor (both potential and in this case manifested) now entitled to be weighed together with the factor of the seriousness of the offense.

Affirmed in part; vacated in part and remanded with direction.

DOWNING, P. J., and LEIGHTON, J., concur.