THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH YOUNG, Defendant-Appellant.

First District (1st Division)   No. 84—1838

Opinion filed January 20, 1987.

QUINLAN, P.J., dissenting.

Jenner & Block, of Chicago (Thomas K. McQueen and Robert D. Nachman, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Richard A. Stevens, and James P. Stevenson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

In December 1981, defendant Joseph Young appealed his convictions and sentence for murder and armed robbery to this court. Thereafter, in an order pursuant to Supreme Court Rule 23 (87 Ill. 2d R. 23), this court affirmed the convictions, but remanded the case to the trial court for reconsideration of the sentence. On remand, the trial court reimposed the same sentence: a term of natural-life imprisonment on the murder conviction and a concurrent term of 60 years on the armed-robbery conviction. Defendant again appeals, arguing: (1) the trial court's refusal to consider evidence of his activities since his first sentencing hearing violated his constitutional and statutory rights; (2) his sentence should be reduced by this court in light of his rehabilitative potential; (3) the imposition of an extended-term sentence for armed robbery violated the Uniform Code of Corrections (the Code); and (4) if this court remands the case for a new sentencing hearing, it should be remanded to a different judge.

The record shows that following a bench trial, defendant was convicted of the strangulation murder of a 63-year-old woman who was the mother of defendant's former stepmother. Defendant's written confession had been admitted into evidence at trial. In his confession, defendant stated that he left his house, taking with him an electrical extension cord, and went to the victim's house intending to strangle her. He was invited into the home by the victim, ate lunch with her, and then walked up behind the victim and strangled her by putting the electrical cord around her neck and holding it there for five minutes. Defendant's statement was corroborated by physical evidence and testimony of his friend who helped him remove items from the victim's apartment the day following the murder.

The record also shows that in 1977, prior to the instant offense, defendant had been adjudged delinquent and placed on nine months' juvenile probation for the aggravated battery of a mentally handicapped female. The victim in that case was stabbed with a butcher knife and suffered more than 50 lacerations to her head and hand. She ultimately lost the use of two fingers as a result of the attack. Defendant was 16 years old at the time of the stabbing. Thereafter, in 1980, defendant was convicted of residential burglary and placed on two years' felony probation. Defendant was released on probation for the burglary when he committed the present murder.

In our prior Rule 23 order affirming defendant's murder conviction, this court reviewed defendant's criminal history and found that defendant "has very little, if any, potential for rehabilitation." We nevertheless remanded the cause for reconsideration of defendant's

sentence in view of the defendant's youth and the fact that the sentence carried no possibility of parole. See Ill. Rev. Stat. 1981, ch. 38, par. 1003—6—3(a)(2).

On remand, at the hearing to reconsider the sentence, defendant filed a written motion urging the court to consider evidence of his behavior subsequent to the initial sentencing hearing. The trial court denied the motion, but allowed defendant to introduce evidence of his good prison conduct and rehabilitative potential in order to make a record for this appeal.

At the hearing, Donald Wasson, a Pontiac Correctional Center educator who had taught defendant English and social studies at the institution, described defendant as an "excellent student." He testified that defendant had become quite interested in religion and that he believed defendant could be rehabilitated. Wasson, however, admitted he had not been aware of defendant's aggravated battery of a mentally handicapped girl.

Defendant also called as a witness William Singleton, superintendent of industry at Pontiac Correctional Center. Singleton testified that defendant had been working in the prison's sheet metal plant for approximately eight months. He stated that he would hire defendant for his own business, if he had one, outside of prison. Singleton also admitted, however, that he did not know the details of defendant's prior stabbing.

Marla Sims, the mother of defendant's three-year-old daughter, testified that defendant sends home $20 every two months for their daughter's support. He also writes letters, and she visits him at the prison. Marla Sims' mother, Lois Sims, testified she keeps in contact with defendant and spoke of his increased interest in religion.

To complete his offer of proof, defendant introduced four letters from the prison staff and six letters from teachers. The letters indicated that defendant has adapted well to prison life and has behaved in a polite and courteous manner.

After hearing arguments, the trial judge stated that he knew defendant was 20 years old at the time of the sentencing and had considered that fact when he initially sentenced him. The judge further stated that he had considered defendant's history and background, noting that defendant had a history of "preying" on the elderly and infirm, and that his crimes were escalating in nature. The court reviewed the details of defendant's murder of a "63-year-old woman who considered him [defendant] and treated him as her grandson," and observed:

"This, to me, indicates somebody who has a history of violence.

It indicates to me somebody who has a propensity to reap that violence on the weak and the aged and the affirm [*sic*], and it is one who has not accepted any potential for rehabilitation that somebody else has shown in him."

The judge then reaffirmed the sentences.

On appeal, defendant argues first that the trial court should have at least considered the proffered evidence of rehabilitative potential since the initial sentencing hearing. Our State constitution and the Unified Code of Corrections mandate that penalties be determined according to both the seriousness of the offense and the rehabilitative potential of the offender, with the intent to restore him to useful citizenship. (Ill. Const. 1970, art. I, sec. 11; Ill. Rev. Stat. 1985, ch. 38, par. 1001—1—2.) In our prior Rule 23 order, we found that the record indicated that defendant has very little, if any, potential for rehabilitation, but remanded for resentencing in view of defendant's age and the preclusion of parole. This court specifically declined to exercise its power to reduce or vacate the sentence.

On remand, the trial court acted in accordance with the mandate of this court. The court reconsidered the sentence in view of defendant's age and the preclusion of parole, and reaffirmed the same sentence. We note that even if this court had vacated the original sentence, the trial court would still not have been required to consider the behavior of defendant during his incarceration. In this regard, the Code provides that where an original sentence has been vacated, the trial court shall hold another sentencing hearing which *"may* include evidence of defendant's life, moral character and occupation during the time since the original sentence was passed." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(d).) Hence, the language of the statute is discretionary, not mandatory.

The recent Supreme Court case, *Skipper v. South Carolina* (1986), 476 U.S. 1, 90 L. Ed. 2d 1, 106 S. Ct. 1669, does not mandate consideration of a defendant's good prison conduct in this case. *Skipper* held that in a death sentence case it is reversible error for a court not to consider post-arrest behavior at a sentencing hearing. The court reasoned that in a death sentence case a defendant's prison conduct is highly probative of his ability to function in a structured environment. Such evidence could weigh heavily in the jury's decision to impose the death sentence or natural life in prison and accordingly should be presented.

The Supreme Court in *Lockett v. Ohio* (1978), 438 U.S. 586, 604, 57 L. Ed. 2d 973, 990, 98 S. Ct. 2954, 2964-65, highlighted the difference between the factors to be considered in a capital case and a case

involving a sentence for a term of years or life imprisonment. *Lockett* recognized that in a *capital case* "the sentencer *** not be precluded from considering, *as a mitigating factor*, any aspect of defendant's character or record *** as a basis for a sentence less than death." (Emphasis in original.)

■ We further observe that even though the trial court indicated during the hearing that it would not consider evidence of defendant's good prison conduct, the record shows that the court ultimately did consider such evidence when it stated:

> "All that has been shown to me here today is that Mr. Young has demonstrated a capacity to function in a structured society, whereas he did not demonstrate that capacity in an open society. And this is absolutely in keeping with my original sentencing determination."

Thus, the trial court did in fact take into account the evidence of rehabilitation offered by defendant at the hearing. Accordingly, we find no error as to this matter.

■ Defendant further argues that this court should reduce his sentence in light of the evidence adduced at the hearing. It is held that the trial court is in the best position to assess and weigh all factors relevant to sentencing and unless an abuse of discretion can be shown, the reviewing court will not disturb a defendant's sentence. *People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344, 348-49.

■ Next, defendant argues that the trial court erred in imposing an extended-term sentence for his armed-robbery conviction because it violates the extended-term statute. Defendant made no objection on this basis at the time of sentencing and the question was not raised in a motion for a new trial. Nor was the issue raised in defendant's initial appeal of his conviction and sentence. The issue now presented is raised for the first time on this second appeal and is therefore waived for review. *In re Lamb* (1975), 61 Ill. 2d 383, 387, 336 N.E.2d 753, 756.

Even if this issue had not been waived, we nevertheless find no merit to defendant's claim. The extended-term statute provides:

> "A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present. Where the judge finds that such factors were present, he may sentence an offender to the following:
> (1) for murder, a term shall be not less than 40 years and

not more than 80 years;

(2) for a Class X felony, a term shall be not less than 30 years and not more than 60 years; ***" (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a).)

Defendant argues that the statute does not permit an extended-term sentence for his armed-robbery conviction because that offense is not in the class of the most serious offense of which he was convicted, murder.

■ An argument similar to the one now before us was recently addressed by our supreme court in *People v. Neal* (1985), 111 Ill. 2d 180, 489 N.E.2d 845, *cert. denied* (1986), 476 U.S. 1165, 90 L. Ed. 2d 733, 106 S. Ct. 2292. In *Neal*, the defendant was sentenced to death for a murder conviction and received an extended-term sentence for the lesser offense of armed robbery. There, as here, the defendant argued that the statute does not allow an extended-term sentence for armed robbery since that offense was not in the class of the most serious offense of which he was convicted. The supreme court rejected that argument, reasoning as follows:

"The defendant's contention would be valid if he had been given an extended-term sentence of imprisonment on the murder conviction. (See *People v. Jordan* (1984), 103 Ill. 2d 192, 203-06.) The sentence here, however, was not for a term of years. A death sentence was imposed, and the extended-term statutory provision was not applicable." (111 Ill. 2d 180, 204, 489 N.E.2d 845.)

Here, as in *Neal*, defendant was not given an "extended-term sentence" on the murder conviction as that term is used in the statute. The extended-term sentences set forth in the statute are all for a term of years. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a).) In this case, defendant's sentence of life imprisonment without possibility of parole is not a sentence to a term of years, but is by its very nature a sentence of undetermined length. Accordingly, under *Neal*, we find that the imposition of the extended-term sentence for the armed robbery was not precluded in this case by statute.

Given our disposition above, we need not consider defendant's remaining argument that if the cause is remanded for a new sentencing hearing it should be remanded to a different judge.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, J., concurs.

PRESIDING JUSTICE QUINLAN, dissenting:
I dissent because I believe that the trial judge was required to consider the evidence regarding defendant Young's conduct subsequent to the initial sentencing hearing. In our original Rule 23 order, we remanded the matter back to the trial court for reconsideration of the sentence, observing that the record before us at that time indicated very little, if any, potential for rehabilitation, but because of the defendant's age and the fact that the sentence as imposed precluded the possibility of parole, the sentence should be reconsidered. Under such circumstances, it seems clear to me that the trial judge was obligated to consider any relevant evidence regarding the defendant's potential for rehabilitation, and the evidence proffered here by the defendant concerning his good prison behavior and conduct since his initial sentencing was certainly relevant concerning this issue.

In *People v. Johnson* (1975), 29 Ill. App. 3d 763, 331 N.E.2d 306, this court vacated the sentence imposed upon remand of a conviction for murder and three counts of armed robbery where the death penalty had been imposed along with the imposition of a concurrent term of years on the armed-robbery convictions. We found the minimum sentence imposed by the trial judge on remand of four concurrent terms of 40 years' to 60 years' imprisonment improper in view of our statutorily and constitutionally required consideration of not only the seriousness of the offense, but also a defendant's potential for rehabilitation. We further found that there had been particularly relevant evidence introduced there concerning the defendant's potential for rehabilitation, *viz.*, testimony concerning the defendant's behavior and manifest rehabilitation during the almost six years in the penitentiary following his conviction. Because of the persuasiveness of this testimony concerning the defendant's rehabilitation during his period of incarceration and his potential for future rehabilitation, and, the additional fact, that the record did not indicate that the court there had properly taken this evidence into consideration in resentencing, we concluded that the minimum sentence imposed had to be vacated and the matter remanded for resentencing.

While I agree with the majority that the recent United States Supreme Court case of *Skipper v. South Carolina* (1986), 476 U.S. 1, 90 L. Ed. 2d 1, 106 S. Ct. 1669, which required, as a matter of constitutional law, a court to consider post-arrest behavior in sentencing was limited by the court to death cases, the reason for requiring the consideration of this evidence in those cases is persuasive here also. The Su-

preme Court stated that it could hardly be disputed that the testimony offered regarding the defendant's good behavior while in jail awaiting trial was relevant evidence in mitigation of punishment. Also, the court observed that while consideration of a defendant's past conduct as an indication of his probable future conduct was inevitable and not an undesirable element of criminal sentencing, any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what sentence to impose, and evidence concerning the defendant's future conduct, *e.g.*, whether the defendant posed a danger to society in the future, or that he would not, was proper evidence also. That type of evidence, *i.e.*, evidence of possible future conduct, the court stated, must be considered by the sentencer in a death case. The Supreme Court found that the exclusion of such relevant mitigation evidence would prevent a trial court from carrying out its task of considering all relevant facets of the character and record of the individual offender. 476 U.S. 1, ___, 90 L. Ed. 2d 1, 9, 106 S. Ct. 1669, 1673.

This is properly the function of the sentencing judge in all criminal cases, as the Supreme Court in *Williams v. New York* (1949), 337 U.S. 241, 247, 93 L. Ed. 1337, 1342, 69 S. Ct. 1079, 1083, observed:

> "A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics."

Additionally, in determining a proper sentence following a retrial, the court found in *North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072, that a defendant's conduct subsequent to his initial sentence hearing was also relevant to resentencing:

> "A trial judge is not constitutionally precluded * * * from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' *Williams v. New York*, 337 U.S. 241, 245. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources. The freedom of a sentencing judge to consider the defendant's conduct subsequent to the first conviction in imposing a new sentence is no

more than consonant with the principle, fully approved in *Williams v. New York, supra,* that a State may adopt the 'prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime.' *Id.,* at 247." 395 U.S. 711, 723, 23 L. Ed. 2d 656, 668, 89 S. Ct. 2072, 2079-80.

While, as I have stated, *Skipper* was limited to death cases, I, nevertheless, believe that the *Skipper* case is analogous to the case here, since the defendant was sentenced to life imprisonment with no possibility of parole, which was, in a real sense, a death sentence for the defendant concerning his life in the community or society from which he had come. Furthermore, the court here, as had the trial court in *Skipper,* failed to consider the defendant's relevant mitigating evidence of his rehabilitation while incarcerated and thus his potential for future rehabilitation contrary to the trial court's obligation to consider all relevant facets of the character and record of the defendant in imposing a sentence. In *Skipper,* the court found that this violated the Federal Constitution. I submit, the requirements of our statute and constitution here (see Ill. Rev. Stat. 1985, ch. 38, pars. 1005—4—1(a)(3), 1005—5—3.1(a)(9), 1005—5—3.1(b), 1005—5—3(d); Ill. Const. 1970, art. I, sec. 11), similar to the requirements of the eighth and fourteenth amendments to the Federal Constitution in death cases, were violated.

In *Lockett v. Ohio* (1978), 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954, and *Eddings v. Oklahoma* (1982), 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869, the Supreme Court found that the eighth and fourteenth amendments to the Federal Constitution required that a sentencer not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death. Thus, a statute may not preclude a sentencer from consideration of any mitigating factors, nor may the sentencer himself refuse to consider, as a matter of law, any relevant mitigating evidence. This is so because the risk is great that the death penalty will be imposed when a less severe penalty would properly have been imposed if the mitigating evidence had been received and considered. Such a risk is not acceptable under the eighth and fourteenth amendments to the United States Constitution where a capital crime is involved.

I believe this risk is also unacceptable under the provision of our Unified Code of Corrections (see Ill. Rev. Stat. 1985, ch. 38, par. 1001—1—2(a) *et seq.*) and the Illinois Constitution (Ill. Const. 1970, art. I, sec. 11), in the circumstances posed by the situation here where the defendant faces a sentence of life imprisonment without the possibility

of parole.

Also, while I do concur with the majority's resolution concerning defendant's extended-term sentence for armed robbery based on the Illinois Supreme Court's decision in *People v. Neal* (1985), 111 Ill. 2d 180, 489 N.E.2d 845, *cert. denied* (1986), 476 U.S. 1165, 90 L. Ed. 2d 733, 106 S. Ct. 2292), I do, however, find the majority's reasoning a bit ironic. The *Neal* case upheld the extended-term sentence for the burglary conviction there under the extended-term statute even though the court had imposed a death sentence on the murder conviction. Interestingly, the basis for the majority's conclusion here, that the *Neal* case was controlling, is that the imposition of the life sentence in the present case was analogous to the death sentence in *Neal* for purposes of considering the extended-term sentence. Nevertheless, the majority found the defendant's life sentence, without possibility of parole, not analogous to the death penalty sentence in *Skipper* for purposes of considering mitigating evidence regarding the defendant's rehabilitation and potential for rehabilitation.

Contrary to the majority's differentiation, I believe that the imposition of the death sentence and the defendant's life sentence without the possibility of parole are analogous in both situations and particularly so for purposes of requiring the sentencing judge to consider proffered relevant mitigating evidence before imposing a life sentence without the possibility for parole. Of course, the weight to be given to the mitigating evidence is for the trial judge to determine. (See *Eddings v. Oklahoma* (1982), 455 U.S. 104, 114-15, 71 L. Ed. 2d 1, 11, 102 S. Ct. 869, 877). However, to not require a trial judge to consider such relevant evidence would allow the judge to disregard the sentencing scheme set forth in the Code of Corrections and required by our constitution. (*Cf. Williams v. New York* (1949), 337 U.S. 241, 245, 93 L. Ed. 1337, 1341, 69 S. Ct. 1079, 1083.) Mr. Young was entitled to have a sentence imposed that takes into account his potential, if any, to be rehabilitated and to reenter society, if possible, as a productive individual. The failure to consider the evidence proffered by the defendant here did not offer him this opportunity.

Accordingly, I would vacate the sentence imposed by the trial court and remand the matter for resentencing of the defendant consistent with the views expressed herein. I would also require that this case be assigned to a judge other than the original sentencing judge for purposes of the resentencing. See *People v. Kendrick* (1982), 104 Ill. App. 3d 426, 432 N.E.2d 1054; *People v. Mac Rae* (1979), 78 Ill. App. 3d 266, 397 N.E.2d 509; *People v. Luttmer* (1977), 48 Ill. App. 3d 303, 362 N.E.2d 1093.