In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2320

VERNARD CROCKETT,

*Petitioner-Appellant.*

*v.*

KIM BUTLER,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-09231—**Amy St. Eve**, *Judge*.

ARGUED OCTOBER 2, 2015 — DECIDED NOVEMBER 17, 2015

Before POSNER, SYKES, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. In 2004, sixteen-year-old Jazmine Robinson was shot and killed in her Chicago home. Her boyfriend, petitioner Vernard Crockett, was convicted of first-degree murder and attempted armed robbery for his role in her death. He appealed, asserting that the evidence did not support his attempted armed robbery conviction and that his rights under the Confrontation Clause of the Sixth Amendment had been violated. He prevailed on the first argument. The Illinois Appellate Court reversed his attempted

armed robbery conviction and ordered re-sentencing on the murder conviction.

After re-sentencing, Crockett filed a second appeal—this time challenging his first-degree murder conviction. He argued that without the conviction for attempted armed robbery, there was insufficient evidence to convict him of murder. He also renewed his Confrontation Clause claim. The Illinois Appellate Court affirmed Crockett's murder conviction. After the Supreme Court of Illinois denied further review, Crockett filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied relief, finding that Crockett had procedurally defaulted both of his claims. *Crockett v. Harrington*, No. 13 C 9231, 2014 WL 2535116 (N.D. Ill. June 5, 2014). We agree, so we affirm denial of his petition.

I.  *Background*

A.  *Crockett's Trial*

On January 20, 2004, sixteen-year-old Jazmine Robinson was shot and killed in the basement of her home in Chicago. An anonymous call led investigators to Crockett and his acquaintance Ronald Lamar. Lamar ultimately pled guilty but refused to testify against Crockett, who went to trial on charges of first-degree murder and attempted armed robbery.

The prosecution relied heavily on evidence of conversations Crockett had with the police soon after Robinson's murder. According to Detective Brian Johnson, Crockett offered police an alibi when they first interviewed him, on January 23, 2004. He claimed he had been at home playing video games on the afternoon of the murder. The police then

released Crockett from custody. Soon afterward, though, Detective Johnson spoke with Lamar, and that led him to order that Crockett be arrested. Crockett bases his Confrontation Clause claim on Detective Johnson's testimony about his next conversation with Crockett after bringing him in the second time:

> Q    And during that conversation tell us what you said to the Defendant and what he said to you.
>
> A    At that point I told the Defendant that, you know, after speaking with Mr. Lamar that we believe that he had been present and actually killed [Jazmine] Robinson on the date in question.

Crockett again denied involvement, but this time he provided a different alibi: he had been with his friends Tristan Campbell and Nicholas Brown when Robinson was murdered. As false alibis go, this was surely one of the worst ever. Detective Johnson quickly learned that both Campbell and Brown had actually been in police custody on the afternoon in question.

Assistant State's Attorney Tim Carter also testified at trial. Carter interviewed Crockett on the evening of January 23, 2004 and confronted him with his alibi statements. Crockett responded that he wanted "to be truthful" and then admitted he had been involved in the events leading up to Robinson's death. According to Carter, Crockett said that Lamar had approached him the Sunday before the murder expressing his desire to "hit a lick"—that is, to rob someone. Crockett told Lamar that he knew Robinson was "holding money

for some guys" and offered to "set it up." Crockett also said that he knew Robinson "wouldn't go along with the robbery if she wasn't threatened with a gun." He knew Lamar would have one, though he said he did not want Lamar to shoot Robinson.

Carter further testified that Crockett admitted going to Robinson's house with Lamar on January 20, 2004 on the pretense of looking at the results of her pregnancy test. Robinson let them in, brought them to the basement, and offered Crockett a glass of rum, which he left atop a freezer. Crockett asked Robinson to bring down a CD to play some music. He then signaled Lamar to go ahead with the robbery.

Once Robinson turned the music up, Lamar pulled out his gun and demanded money. Robinson showed no signs of complying. Lamar shot her in the back. Crockett admitted fleeing when he heard the first shot. He said that he heard several more shots as he ran.

That was the substance of Crockett's first confession, according to prosecutor Carter. Carter also testified that he interviewed Crockett again later the same night, accompanied by other detectives. Crockett "basically told me the same thing" but "went into somewhat more detail about the planning of it and what happened and said some things a little bit differently." Finally, Carter testified that the next day, January 24, 2004, he interviewed Crockett again and that he related "basically the same facts."

Crockett testified in his own defense and told a very different story. According to Crockett, on January 20, 2004, he had planned to visit Robinson alone to see the results of her pregnancy test. He met Lamar on the way and asked him to

come too. Crockett confirmed that Robinson had given him the glass of rum and played music, but he testified that Lamar had pulled out a gun unexpectedly. Crockett testified that both he and Robinson had asked Lamar to put the gun away, and that he and Lamar had argued heatedly about the weapon. According to Crockett, Robinson then pushed Lamar from behind, and Lamar then shoved Robinson to the ground and shot her. Crockett admitted fleeing at that point. He admitted he did not report the shooting to the police, claiming he was afraid for his and his loved ones' safety. Crockett also denied making the statements prosecutor Carter described, testifying that he had told Carter "the story that I just told you all."

The jury found Crockett guilty of both first-degree murder and attempted armed robbery. He was sentenced to forty-two years for the murder and a consecutive term of ten years for attempted armed robbery.

B. *First Appeal*

On direct appeal, Crockett argued that the State had failed to establish the *corpus delicti* of attempted armed robbery. Under the *corpus delicti* doctrine, the state must prove with evidence other than the defendant's confession that the crime was actually committed. *People v. Lara*, 983 N.E.2d 959, 964 (Ill. 2012). Crockett argued that his conviction ran afoul of the *corpus delicti* rule because the only evidence of an attempted armed robbery was his own confession. As a corollary, he argued that the invalid robbery conviction had affected his sentence on the murder conviction, and he requested re-sentencing. Finally, he argued that Detective Johnson's testimony about his conversation with Lamar that

led the police back to Crockett violated the Confrontation Clause.

The Illinois Appellate Court agreed with the first argument, holding that no independent evidence corroborated Crockett's confession that an attempted armed robbery had occurred. Because the court could not be certain that the attempted armed robbery conviction had not influenced the murder sentence, it also ordered re-sentencing on the murder conviction, as Crockett had requested. The court rejected the Confrontation Clause claim, however, holding that Detective Johnson's testimony had simply described police investigatory procedure and was not testimonial in nature. Crockett did not file a petition for leave to appeal the Illinois Appellate Court's decision to the Supreme Court of Illinois.

C. *Second Appeal*

Crockett again received a forty-two-year sentence for the first-degree murder conviction and again appealed. He renewed the Confrontation Clause claim from his first appeal, but he also raised an entirely new issue: that the earlier decision setting aside his attempted armed robbery conviction also meant there was insufficient evidence to sustain his first-degree murder conviction.

To explain, a defendant commits first-degree murder under Illinois law if he kills an individual without lawful justification and: (1) "intends to kill or do great bodily harm . . . or knows that such acts will cause death"; (2) "knows that such acts create a strong probability of death or great bodily harm"; or (3) "is attempting or committing a forcible felony other than second degree murder." 720 Ill. Comp. Stat. 5/9-1(a). Crockett argued that without the at-

tempted armed robbery conviction, a conviction of felony murder under 720 Ill. Comp. Stat. 5/9-1(a)(3) could no longer stand. He also argued that the evidence at trial was not sufficient to sustain a conviction on either of the other two theories.

In the second appeal, the Illinois Appellate Court held that Crockett had waived any challenge to the sufficiency of the evidence supporting his first-degree murder conviction by failing to raise it during his first appeal. In Illinois, waiver "will be found where a defendant fails to raise an issue in his initial appeal and attempts to raise it for the first time in his second appeal." *People v. Crockett*, No. 1-10-3685, 2012 WL 6953467, at \*4 (Ill. App. Sept. 28, 2012), citing *People v. Young*, 504 N.E.2d 115, 118 (Ill. App. 1987). The state court found that Crockett's sufficiency of the evidence challenge "was a logical corollary to his challenge to the attempted armed robbery conviction," making it "practicable and logical" to raise the two together. *Id.*

The court held further that Crockett's sufficiency challenge failed on the merits because the evidence supported a finding of guilt by accountability. In Illinois, accountability "is established where the State proves beyond a reasonable doubt that the defendant either shared the criminal intent of the principal or there was a common criminal design." *Crockett*, 2012 WL 6953467, at \*6, citing *People v. Perez*, 725 N.E.2d 1258, 1264–65 (Ill. 2000). According to the Illinois Appellate Court, the "evidence need only prove that the defendant had the specific intent to promote or facilitate *a crime*, which need not be the actual crime for which he was charged." *Id.* at \*7 (emphasis in original), citing *People v. Miscichowski*, 493 N.E.2d 135, 141 (Ill. App. 1986). Applying

that standard and viewing the evidence in the light most fa-
vorable to the prosecution, the state court held that the evi-
dence showed that Crockett intended to promote or facilitate
armed robbery when he knowingly aided Lamar in planning
and committing the robbery, making him "accountable un-
der the common design rule for the victim's murder." *Id.* at
*8.

As for the Confrontation Clause claim, the Illinois Appel-
late Court noted that it had rejected the same claim in the
first appeal, so the trial court had lacked the authority to
consider it on remand. *Id.* at *8. The appellate court then re-
jected the claim based on the law of the case. *Id.* In the sec-
ond appeal, Crockett petitioned for leave to appeal to the
Supreme Court of Illinois, but that court denied his petition.

D. *Habeas Corpus Proceedings*

Crockett then filed a petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254. The district court denied relief,
concluding that Crockett had procedurally defaulted both
claims and that he had not shown that actual innocence ex-
cused the default. We granted a certificate of appealability
on the merits of both claims, as well as the preliminary ques-
tions of procedural default. See 28 U.S.C. § 2253(c).

II. *Analysis*

We review *de novo* a district court's denial of a petition for
a writ of habeas corpus. *Peterson v. Douma*, 751 F.3d 524, 529
(7th Cir. 2014). Because Crockett is in state custody, the case
is governed by 28 U.S.C. § 2254, as amended by the Antiter-
rorism and Effective Death Penalty Act of 1996 (AEDPA).
Under AEDPA, we review deferentially the decision of the
last state court to address Crockett's claims on the merits.

*Harris v. Hardy*, 680 F.3d 942, 948 (7th Cir. 2012). A federal court may grant habeas corpus relief on a claim only if the state court's adjudication on the merits of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

The district court rejected both of Crockett's claims on procedural grounds, however, so before we might turn to their merits, we must resolve the threshold questions, whether procedural defaults bar us from reaching those claims at all. "Whether a party has procedurally defaulted his claim is a question of law that we review de novo." *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008).

A. *Confrontation Clause*

The district court rejected Crockett's Confrontation Clause claim because he failed to present it for one full round of state court review. Before seeking federal habeas relief, state prisoners must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); see also *Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004) (petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory").

During his first appeal, Crockett presented his Confrontation Clause claim to the Illinois Appellate Court but did not seek review by the Supreme Court of Illinois. Under

*O'Sullivan*, that means Crockett has procedurally defaulted this claim. He also has not shown "cause and prejudice" or actual innocence to excuse his default. See *Spreitzer v. Schomig*, 219 F.3d 639, 647–48 (7th Cir. 2000) (discussing exceptions to procedural default).[1]

Crockett's second appeal could not cure his earlier default, even though he petitioned for leave to appeal to the Supreme Court of Illinois in the second appeal. When faced with the same Confrontation Clause claim a second time, the Illinois Appellate Court rejected it based not on the merits but on the law of the case doctrine: a previous decision on the merits by an appellate court is final and conclusive in a second appeal in the same case. *People v. McNair,* 486 N.E.2d 941, 943 (Ill. App. 1985). Accordingly, the Supreme Court of Illinois never had the chance to address the Confrontation Clause claim on the merits. The district court correctly found procedural default, and we also cannot reach the merits of this claim.

B.   *Sufficiency of the Evidence*

Crockett's other claim is that there was insufficient evidence to sustain his murder conviction. He argues that the Illinois Appellate Court unreasonably applied *Jackson v. Virginia*, 443 U.S. 307, 324 (1979), which teaches that an applicant can win habeas corpus relief under § 2254 if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."

---

[1] In the district court, Crockett argued that he was actually innocent, but he has not pressed that argument here.

Again, Crockett faces a procedural hurdle. The Illinois Appellate Court found that he had waived his sufficiency-of-the-evidence challenge to his murder conviction by failing to raise it in his first appeal. In federal habeas cases under § 2254, federal courts may not address the merits of a claim that the state court resolved on "a state law ground that is both independent of the federal question and adequate to support the judgment." *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010). This doctrine stems from equitable considerations of federalism and comity, and it protects the states' interests in correcting their own courts' mistakes. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). Crockett challenges only the adequacy of the asserted state law ground in this case. Whether a state procedural ruling is "adequate" is a question of federal law. *Lee v. Kemna*, 534 U.S. 362, 375 (2002), quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965).

In assessing the adequacy of a state procedural ruling, federal courts do not review the merits of the state court's application of its own procedural rules. See *Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014). Instead, we ask whether the rule invoked was "firmly established and regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60 (2009), quoting *Lee v. Kemna*, 534 U.S. at 376. If so, federal review is barred, absent a showing of either cause and prejudice or actual innocence, and neither has been shown here. If a rule has been applied "infrequently, unexpectedly, or freakishly," however, it may not be adequate, for "the lack of notice and consistency may show that the state is discriminating against the federal rights asserted." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

The Illinois Appellate Court held that Crockett had waived his *Jackson* challenge to the sufficiency of the murder evidence because he could have presented it in his first appeal but did not. The state calls this the "First Appeal Rule." See, e.g., *Village of Ringwood v. Foster*, 986 N.E.2d 662, 671 (Ill. App. 2013); *People v. Young*, 504 N.E.2d 115, 118 (Ill. App. 1987).

Crockett acknowledges that the First Appeal Rule is "firmly established and regularly followed in Illinois." He argues, however, that its application in his case was inappropriate and unexpected because he could not have raised his *Jackson* challenge in his first appeal. Cf. *Village of Ringwood*, 986 N.E.2d at 671 (where "a question was open to consideration in a prior appeal and it *could have been presented but was not*, the question will be deemed to be waived") (emphasis added), quoting *Turner v. Commonwealth Edison Co.*, 380 N.E.2d 477, 481 (Ill. App. 1978). This is so, Crockett argues, because his *Jackson* challenge depended on his first obtaining a reversal of his attempted armed robbery conviction.

Reversal of the attempted armed robbery conviction was a needed foundation for the *Jackson* challenge to the murder conviction, but the Illinois court did not act unfairly by finding that Crockett still could have raised both challenges in the same appeal. Parties frequently raise contingent arguments simultaneously. In fact, Crockett actually raised a different argument in his first appeal that, like his new *Jackson* challenge, hinged on a favorable outcome to his *corpus delicti* challenge to his attempted armed robbery conviction. He argued—successfully—that if the appellate court reversed his attempted armed robbery conviction, it should also remand

the case for re-sentencing on the remaining murder conviction to ensure the improper robbery conviction did not influence the original sentence. There is no reason he could not have done the same with the contingent *Jackson* challenge he raised in the second appeal. The Illinois Appellate Court's application of the First Appeal Rule to his case therefore was not "unexpected" or "freakish." As an adequate and independent state law ground for the court's decision, it bars federal review of the merits of Crockett's *Jackson* challenge.

Even if Crockett could somehow overcome that bar, his sufficiency-of-the-evidence claim would still fail on the merits. Federal habeas corpus relief is not available to correct perceived errors of state law. *Bates v. McCaughtry*, 934 F.2d 99, 102 (7th Cir. 1991), quoting *Pulley v. Harris*, 465 U.S. 37, 41 (1984). A claim that the state court "misunderstood the substantive requirements of state law," for example, does not present a true *Jackson* challenge and is not cognizable under § 2254. *Bates*, 934 F.2d at 102; see also *Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009) (rejecting *Jackson* challenge where petitioner was "impermissibly attempting to use a petition for a writ of habeas corpus to press his preferred interpretation of Illinois law").

Though Crockett argues otherwise, his *Jackson* challenge is really a claim that the Illinois court misinterpreted state law. In his view, the Illinois accountability statute, 720 Ill. Comp. Stat. 5/5-2, requires the State to prove that he and Lamar shared a common design to commit a murder if he is to be held accountable for the murder. The Illinois Appellate Court rejected that claim as a matter of state law, holding that the theory of accountability requires only that the evidence prove the defendant had the specific intent to promote

or facilitate "*a crime*, which need not be the actual crime for which he was charged." *Crockett*, 2012 WL 6953467, at *7 (emphasis in original). Whether the Illinois Appellate Court is correct or not in its interpretation of 720 Ill. Comp. Stat. 5/5-2, is "beyond the reach of a federal court on collateral attack." *Bates*, 934 F.2d at 103.

Accordingly, the district court correctly found that Crockett procedurally defaulted his claims. Crockett's *Jackson* claim also fails on the merits because at its core it challenges the state court's interpretation of Illinois law, which is not cognizable under § 2254.

AFFIRMED.